Case 62—PETITION ORDINARY—December 5.

## Abernathy & Long v. Wheeler, Mills & Co.

APPEAL FROM CHRISTIAN COURT OF COMMON PLEAS.

SALE BY WAREHOUSEMAN OF GOODS NOT BELONGING TO HIS PRINCIPAL. A public warehouseman to whom goods are consigned for sale and who in ignorance of any claim adverse to that of his principal, the apparent owner, sells the goods and pays over the proceeds to his principal, who, it is afterward discovered, was not the owner or authorized to sell them, is not liable to the real owner or to a mortgagee for the proceeds of the sale.

PETREE & DOWNER AND D. L. JOHNSON FOR APPELLANTS.

1. A bailee can not dispute the title of his bailor, and is estopped to set up title in another. (Stephens v. Vaughn, 4 J. J. M., 207; Redfield on Carriers and other Bailments, p. 561, sec. 712; Newcomb-Buchannan Co. v. Baskett, 14 Bush, 663; Cooley on Torts, 450-6.)
2. An agent is not personally liable when acting in good faith within the

apparent scope of his authority. (1 Parsons on Contracts, 66; Parsons on Mercantile Law, 147; Smout v. Ilbery, 10 M. & W., 7.)

H. J. STITES FOR APPELLEES.

A commission merchant receiving produce for sale must take notice of mortgage liens of record whether the commission merchant resides in the county where the mortgage is recorded or elsewhere. (Pool v. Atkinson, 1 Dana, 110.)

Such an agent must, at his peril, see that the property committed to him for sale is the property of the person placing it in his hands. (Taylor, Cole & McCloud v. Pope, 5 Cold., 413; Kanage v. Taylor, 7 Ohio St., 134; 70 Am. Dec., 68.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

C. S. Anderson agreed to do farm work in Christian county for J. S. Anderson during the year 1888. He was to receive as compensation for his work his board and lodging and one hundred and fifty dollars, and any balance that might be due him at the end of the year on account of his wages, he was to have tobacco enough raised on the farm in 1888 to pay said balance. At the close of said year J. S. Anderson was indebted to C. S. Anderson on account of said contract in the sum of $135.00. On the respective dates of July 21 and the 19th of September, 1888, J. S. Anderson executed a mortgage on said crop of tobacco to Wheeler, Mills & Co., tobacco warehousemen in the city of Hopkinsville, Ky., which mortgage was duly recorded, etc.

In 1889 said balance being unpaid and J. S. Anderson having died, C. S. Anderson caused two hogsheads of said tobacco to be prized and sent in the name of G. S. Anderson to the tobacco warehouse of the appellants in the city of Hopkinsville for sale; the appellants, as such warehousemen, sold said tobacco at public sale and placed the net proceeds of sale in bank to the credit of said sale, and thinking that C. S. Anderson was G. S. Anderson,

they gave him a check for the net proceeds of said tobacco. Wheeler, Mills & Co., mortgagees, sued Abernathy & Long and C. S. Anderson, &c., for the price of said tobacco. It is admitted that Abernathy & Long received and sold said tobacco as public tobacco warehousemen in the usual course of business and paid the proceeds of sale to C. S. Anderson without actual notice of the existence of appellees' mortgage. Are Abernathy & Long responsible for the sum for which the tobacco was sold? We think not. They were public warehousemen for the purpose of receiving the tobacco of the producer and selling it at public auction in consideration of receiving pay for storage and certain commissions on the sales. They assumed the obligation of serving the entire public in the matter of receiving and selling the tobacco of the producer, and they had no right to select their customers and to refuse others, provided they conformed to the reasonable rules and regulations of the house. (See Nash, &c., v. Page, &c., 80 Ky., 539.)

It is not contended that the warehousemen had any interest in the tobacco whatever; they were only entitled to a commission for making the sale and to be re-imbursed for their other expenses and trouble in receiving and handling the tobacco.

So the question is, are they responsible to the mortgagees of the tobacco as for a conversion of it? That question seems to be settled in principle in Newcomb-Buchanan Co. v. Baskett, 14 Bush, 658. It is there settled that a public warehouseman receiving, stowing and selling goods, in his line of duty, on commission, and having no property interest in the goods and having no notice of an adverse claim to them is not guilty of a conversion of

them by the mere sale of them on account of the person that consigns them to his house for sale. In such case the warehouseman asserts no interest in the goods or right to them, hostile to the mortgagee or true owner; he simply acts as the custodian and mouthpiece of the apparent owner. No one would contend that, had C. S. Anderson employed the appellants as auctioneers to sell the tobacco at auction on the streets of Hopkinsville, they receiving a compensation for their services only, and having no property right in the tobacco, they would have been liable to the appellees as for a conversion of the tobacco. Why? Because they asserted no right or interest hostile to the appellees, but acted simply as the intermediaries or indifferent parties between the apparent owner of the tobacco and the bidders for it. So here they act as public intermediaries in receiving and selling the tobacco, not having any interest therein, but for compensation merely, and when the tobacco is presented to them for public storage and sale by the apparent owner in the usual way, and they having no knowledge or information that others had an adverse interest in the tobacco, and there being no fact or circumstance attending the transaction that should put them as persons of ordinary prudence upon inquiry as to the rights of others in reference to the tobacco, it would not be in the interest of trade to require them to institute inquiry and investigation before sale as to the true condition of the title of the tobacco.

The judgment is reversed as to Abernathy & Long and affirmed as to C. S. Anderson.