ELIZABETH C. KEARNEY v. JONATHAN L. CLUTTON
ET AL.

*Chattel mortgage—Warehouseman—Auctioneer—Conversion—*
*Description of property—Judgment.*

1. Trover will not lie against a storage company for the value of goods stored with it by a mortgagor, and taken from its custody by the mortgagee, without its knowledge or consent, and converted to his own use.

2. Where an auctioneer receives property, and sells it, and pays over the proceeds, less his commission, he is liable in trover to the real owner, although he has no knowledge of want of title in the party for whom he sells, and acts in good faith.

3. Where in an action of trover against a mortgagee, a storage company with which the goods had been stored by the mortgagor, and an auctioneer who received the goods, sold them at mortgage sale, and turned over the proceeds to the mortgagee, the jury render a verdict for a certain sum against each defendant, and there is no testimony by which they can determine that each defendant converted a portion of the goods, it is not error for the court to send the jury back, with the instruction that there is no ground for a division of the verdict against the defendants.

4. Where in an action of trover against a mortgagee, and an auctioneer who sold the goods on foreclosure, it appears beyond contradiction that a portion of the goods sued for were not covered by the mortgage, it is not error to refuse to submit to the jury, at the request of the defendants, the question whether the auctioneer sold goods to an amount exceeding the mortgage debt.

5. Where mortgaged goods are described in the mortgage as "all household and personal effects," and said general description is followed by a specific and minute description of the goods, the latter description limits the former to the property particularly described.

6. Where, in trover for chattel-mortgaged property wrongfully converted by the mortgagee, it appears that only a portion of the sum purporting to be secured by the mortgage was received by the mortgagor, and that on an attempted settle-

ment she received a certain sum, and that a portion of the goods sued for were not covered by the mortgage, the mortgagor should have judgment for the value of the mortgaged property, less the amount of money so received, and also for the full value of the goods not mortgaged.

Error to Wayne. (Hosmer, J.) Submitted on briefs April 17, 1894. Decided June 16, 1894.

*Trover.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Corliss, Andrus & Leete, W. F. Atkinson,* and *Ronald Kelly,* for appellants.

*Edward S. Grece (George H. Penniman,* of counsel), for plaintiff.

GRANT, J. This is an action of trover for the conversion of certain household and personal goods. Plaintiff and her husband, on April 24, 1890, executed a chattel mortgage to one Cromwell Clutton, to secure the payment of an expressed consideration of $135. Shortly afterwards Mr. Kearney died. After his death, Mrs. Kearney executed to another person a second mortgage upon the goods, for the sum of $200. She broke up housekeeping, and stored the goods with the defendants Grace, who carried on a storage and cartage business, under the name of the Fidelity Storage Company. Cromwell Clutton, it appears, lived in Dakota, and defendant Jonathan L. Clutton made the loan, and took the mortgage in his name. Jonathan L. Clutton carried on the business in his brother's name, and had an interest in it. Jonathan L., learning that the goods had been removed from the plaintiff's house, requested an interview with the plaintiff. She informed him where the goods were stored, and claims that she then made an agreement with him that proceedings to foreclose the mortgage should be postponed until she had obtained

some life insurance which she claimed to be due on a policy upon her husband's life. Defendant Clutton denied this conversation, and testified that plaintiff then informed him that she could not redeem the property. The mortgage was then past due. The defendant Clutton then, in the name of his brother, brought an action of replevin in justice's court against the defendants Grace to recover the property. The writ of replevin was placed in the hands of one William H. Guyott, a constable, for service. He made due return to the writ that he had replevied the goods, and delivered them to the plaintiff, and had made personal service of the writ upon the defendants Grace. The goods were not removed by the constable from the storehouse of the Graces, but, on the day following, defendant Clutton caused them to be removed to the auction room of the defendant Jerome, where, after notice of sale, they were sold by Jerome, who realized upon the sale $82, which he paid over to Clutton, after deducting his commission. A few days after, plaintiff learned of the above proceedings, and related the transaction to some of her friends, who went to Clutton, and exacted from him $65, which he claims was a settlement of the entire transaction, and which was paid over to the plaintiff. She insisted that she did not authorize this settlement, and shortly afterwards instituted this action. She recovered verdict and judgment for $800. The jury returned a verdict of $500 against defendant Clutton, $150 against the defendants Grace, and $150 against Jerome. This verdict was objected to by the plaintiff, and, under the instruction of the court, the jury retired, and brought in a verdict for the whole amount against all the defendants jointly.

1. The verdict and judgment against the defendants Grace cannot be sustained. There is no evidence connecting them with any conversion. The second count in

the declaration alleges a conspiracy between the defendants to defraud the plaintiff. There is no evidence tending to show that the defendants Grace had any knowledge of the replevin suit, or of the sale of the goods. The constable, a witness for plaintiff, flatly contradicts his return to the writ, by testifying that he did not take the goods under his writ; that he never saw them; that he made no service upon either of the defendants Grace; that Clutton told him not to take the goods, but to leave them there; and that the only service he made was upon their book-keeper. If the bookkeeper had handed this writ to his employers, or if it had been properly served upon them, being a valid writ, it would have operated as a complete defense to any action against them. Nor can they be held for conversion from the fact that they did not notify the plaintiff that the goods had been so seized. But, as already shown, plaintiff failed to bring any knowledge of the transaction home to them. If there was any evidence of collusion and conspiracy, it was between Clutton, the constable, and the bookkeeper, the only parties shown to have had any connection with the replevin suit.

2. In regard to the liability of defendant Jerome, a more difficult question is presented. There is no evidence that he acted in bad faith or in collusion with Clutton. Clutton took the goods to his auction rooms, to be sold by him as agent and auctioneer, under the foreclosure sale, a copy of which was posted in Jerome's window. It is argued on behalf of plaintiff that Jerome is liable, though acting in good faith, if the taking by Clutton was tortious. It is sought to place Jerome in the position of an officer who seizes and sells property under a writ. An officer acting under his writ is liable beyond question when he seizes property under a void execution, or the property of a stranger under a valid execution. The law considers such officer as the moving party. He is the

only one authorized to make a levy and sale. He acts at his peril. Counsel cite Cooley, Torts, 451:

" One who buys property must, at his peril, ascertain the ownership; and, if he buys of one who has no authority to sell, his taking possession, in denial of the owner's right, is a conversion. The vendor is equally liable, whether he sells the property as his own or as officer or agent; and so is the party for whom he acts, if he assists in or advises the sale."

The learned author cites the following authorities in support of the text: *Billiter v. Young*, 6 El. & Bl. 1; *Cooper v. Chitty*, 1 Burrow, 23; *Garland v. Carlisle*, 4 Clark & F. 693; *Moore v. Eldred*, 42 Vt. 13; *Calkins v. Lockwood*, 17 Conn. 154; *Smith v. Colby*, 67 Me. 169.

An examination of these authorities discloses that none of them involve the liability of an agent or auctioneer who merely sells the property for another when brought to him for that purpose.

In *Billiter v. Young* the defendant was not the sheriff, but plaintiff in the execution under which the sheriff, by his direction, seized and sold the property, the title to which had passed from the defendant in the execution.

In *Cooper v. Chitty* the sheriff, who had seized goods under similar circumstances, was held liable, the title having passed, by an assignment in bankruptcy, out of the debtor to the assignee, before levy and sale.

In *Garland v. Carlisle*, decided by the house of lords in 1837, there is an able discussion of the liability of a sheriff who levied upon the goods of a bankrupt. The sheriff was held liable, the court appearing to base their judgment upon the fact that the property seized was in the custody and power of the sheriff, and could not be disposed of by an agreement of the parties to the suit without the permission of the sheriff.

In *Moore v. Eldred* the defendant was held liable because he had co-operated with the purchaser of the

property with the intent to deprive the plaintiffs, the rightful owners, of it.

In *Calkins v. Lockwood* the defendant was held liable because he acted for the other defendants as their officer in their service, and because, by their direction, he removed and retained the property.

In *Smith v. Colby* the defendant, the superintendent of a poorhouse, under the direction of the selectmen of the town, removed and carried away a fence upon the plaintiff's land, and refused, upon demand, to return it. He was held in trover, and correctly so, because he alone removed the property.

The above are all the authorities cited in behalf of the plaintiff. No authorities have been cited by either party bearing upon the question. The authorities are not uniform, but the clear weight of authority holds that where an auctioneer receives and takes the property into his possession, and sells it, paying over the proceeds, less his commission, he is liable, although he has no knowledge of want of title in the party for whom he sells, and acts in good faith. *Hoffman v. Carow*, 22 Wend. 285; *Coles v. Clark*, 3 Cush. 399; *Cochrane v. Rymill*, 40 Law T. (N. S.) 744; *Ganly v. Ledwidge*, 10 Ir. Com. Law, 33. See, also, *Koch v. Branch*, 44 Mo. 542; *Hollins v. Fowler*, L. R. 7 H. L. 757. To the contrary are *Rogers v. Huie*, 2 Cal. 571; *Frizzell v. Rundle*, 88 Tenn. 396. See, also, *Ashe v. Livingston*, 2 Bay, 80; *Greenway v. Fisher*, 1 Car. & P. 190. Where an agent in good faith sold stolen coupons of United States bonds, and paid the proceeds over to the thief, he was held not liable in an action for their conversion. *Spooner v. Holmes*, 102 Mass. 503. The court distinguish between that case and *Coles v. Clark*, upon the ground that the coupons were negotiable promises for the payment of money, and that the rule of *caveat emptor* did not apply. The auctioneer may protect him-

self by requiring indemnity, and we think the rule holding him liable is supported by the better reason.

3. We think the court committed no error in sending the jury back, and instructing them that there was no ground for a division of the verdict against defendants. They were either jointly liable, or there was no liability as against the defendants Grace and Jerome. There was no testimony by which the jury could determine that each defendant converted a portion of the goods.

4. Defendants' attorneys asked that the following question be submitted to the jury, viz.: "Did Jerome sell more than $135 worth of goods?" which the court refused. We think this refusal was correct, because it appeared beyond contradiction that goods were seized and sold which were not covered by the chattel mortgage. The property was described in the mortgage as "all household and personal effects," which expression was followed by a specific and minute description of the property. This minute description limited the expression "all household and personal effects" to the property described, and excluded other property. Dresses and other articles of plaintiff's wardrobe, the family Bible, the family pictures, and other things which were not covered by the mortgage were seized and sold. As to these, she was entitled to recover, regardless of the mortgage.

5. In the event of a new trial, it is proper to say that the statement of counsel for the plaintiff, in the presence of the jury, that he proposed to show that the chattel mortgage was obtained by fraud, that it was folded so as to look like a single paper, and that plaintiff thought it was a note, and not a mortgage, and other similar statements, were unjustifiable, from the fact that no testimony was offered in support of such statements.

6. Testimony was offered by the plaintiff showing that only $65 was in fact obtained upon the chattel mortgage,

and that one payment had been made. The defendant Clutton's mortgage was good for the amount actually advanced and still due. The jury should have been instructed that, if they found the transaction to be as claimed by the plaintiff, she was entitled to judgment for the value of the goods mortgaged, less the amount of the mortgage and the $65 which she had received in the supposed settlement, and for the full value of the goods not mortgaged.

Judgment reversed, and new trial ordered.

The other Justices concurred.