ELMER G. STARR, RECEIVER, APPELLEE, V. BANKERS UNION
OF THE WORLD ET AL., APPELLANTS.

FILED APRIL 10, 1908.    No. 15,155.

1. **Beneficial Associations: POWERS.** A fraternal beneficiary association organized under the laws of the state has no authority to purchase the business and assume the risk of another association of like character.

2. ——: CONVERSION: DEFENSES. Where a fraternal beneficiary association obtains possession of the funds of another association of like character, it cannot defend an action for conversion on the ground that the acts by which it secured the funds were not within its corporate capacity.

**3. Trover:** LIABILITY OF AGENT. One who aids and assists in the wrongful taking of chattels is liable for the conversion thereof, though he acted as agent for another.

**4. Receivers:** APPOINTMENT: EVIDENCE. The recital of jurisdictional facts in an order appointing a receiver is *prima facie* evidence of the existence of such facts.

**5. Beneficial Associations:** RECEIVERS: JURISDICTION. Where all the property, books and records of a fraternal beneficiary association organized under the laws of another state are brought into this state, and the business of the association is attempted to be here carried on by persons assuming to act as the officers or agents thereof, the courts of this state have power to appoint a receiver to administer the property of such association.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Weaver & Giller, Robert Ryan* and *John W. Burdette,* for appellants.

*Crane & Boucher, contra.*

CALKINS, C.

The Order of the Iron Chain was a fraternal beneficiary society organized under the laws of the state of Minnesota in 1898, and having its home office at Winnebago, in that state, until November 11, 1901. At that date it had cash on hand, $5,466.01 in the benefit fund, $2,348.68 in the reserve fund, and $2.80 in the extension fund. Under the rules governing the order the benefit fund was devoted to the payment of death claims, and the reserve fund was to be used to supplement the benefit fund when the regular benefit assessments exceeded the number of 12 in any one year, while the extension fund was to be used in extending the organization. During 1901, and prior to November 11, there had been 12 regular benefit assessments, and in addition thereto there were valid outstanding death claims amounting to about $20,000. On November 4, 1901, the defendant the Bankers Union of the World, which was a fraternal beneficiary society organized under the laws of

Nebraska, by its directors, authorized the defendant Spinney, its president, "to confer with the directors of the Order of the Iron Chain and make such arrangements as he should deem necessary and proper to effect a consolidation of the said Order of the Iron Chain with the Bankers Union of the World." November 11, 1901, the defendant Spinney, at Winnebago, Minnesota, entered into a written contract with the directors of the Order of the Iron Chain, which stipulated that the management, property, assets and money of the Order of. the Iron Chain should be set over to the Bankers Union of the World; that the latter should use the sums of money set over in a manner conformable to the regulations and by-laws of the former, and pay the mortuary claims then pending and thereafter accruing against that order in accordance with the terms of its certificates, constitution and by-laws. In pursuance of this contract the funds, books, records and other property of the Order of the Iron Chain were turned over to the defendants and brought to Omaha, where the money was placed in the treasury of the Bankers Union of the World and the books and records kept in its office. The head clerk of the Order of the Iron Chain was brought to Omaha and placed in charge of these books and papers. The defendant Spinney assumed the title of supreme chancellor of the Order of the Iron Chain, and proceeded to send out notices of assessment to members of that order, from which a very small sum seems to have been collected. There is no evidence as to what was done with the moneys received from the Order of the Iron Chain, and, so far as the record shows, it still remains in the hands of the defendants. In January, 1904, upon the application of James H. Womack, a beneficiary whose claim against the Order of the Iron Chain had been approved prior to November 11, 1901, the plaintiff was by the district court of Douglas county appointed receiver of the Order of the Iron Chain, with directions to commence such actions as might be necessary against any persons for the recovery of any property or effects of the order which might seem to have

been converted by them or found to be in their possession. The plaintiff, having qualified as such receiver, brought this action in the district court for Douglas county against the defendants the Bankers Union of the World and Edmond C. Spinney, charging the conversion by them of the funds as aforesaid received by them from the Order of the Iron Chain. The defendants answered, asserting the validity of the contract, and denying the jurisdiction of the court to appoint the plaintiff receiver, and upon the issues so formed there was a trial had to the court, who found for the plaintiff, and rendered a judgment against the defendants for the full amount claimed. From this judgment the defendants appeal.

1. That the defendant the Bankers Union of the World had no authority to purchase the business or assume the risks of the Order of the Iron Chain is settled by the decision of this court in *State v. Bankers Union of the World,* 71 Neb. 622. The fact that the statute law of Minnesota undertakes to regulate the consolidation of such societies may be taken as a recognition of the powers of societies organized under the laws of that state to make such an agreement, but it cannot be held to confer such a power upon the Nebraska society. The Nebraska society not having the legal capacity, the obligation it attempted to assume in the contract in question was void as well in Minnesota as Nebraska.

2. Any distinct act of dominion wrongfully exerted over one's property in denial of his right is a conversion. 2 Cooley, Torts (3d ed.), 524; *Hill v. Campbell Commission Co.,* 54 Neb. 59; *Stough v. Stefani,* 19 Neb. 468. While the defendant society is not liable on its contract to assume the risks and liabilities of the Order of the Iron Chain, it cannot defend an action for the conversion of the funds of that order on the ground that the acts by which it secured the funds thereof are not within its corporate power. Cook, Corporations (5th ed.), sec. 15*b; National Bank v. Graham,* 100 U. S. 699; *Mendel v. Boyd,* 3 Neb. (Unof.) 473.

3. The question whether the defendant society would have been liable had it never had the money is not here involved, for it is admitted that it was received by it and placed in its treasury. That the defendant Spinney, through whose agency it actually procured possession of these funds, is also liable therefor cannot be doubted. Where several parties unite in an act which constitutes a wrong to another under circumstances which fairly charge them with intending the consequences which follow, it is a very just and reasonable rule of the law which compels each to assume and bear the responsibility of misconduct of all. 1 Cooley, Torts (3d ed.), 153. Hence, it is held that one who aids and assists in a wrongful taking of chattels is liable for the conversion, though he acted as agent for a third person. *McCormick v. Stevenson*, 13 Neb. 70; *Stevenson v. Valentine*, 27 Neb. 338; *Cook v. Monroe*, 45 Neb. 349; *Hill v. Campbell Commission Co.*, 54 Neb. 59; *Osborne Co. v. Plano Mfg. Co.* 51 Neb. 502.

4. It is argued with much insistence that the order of the district court for Douglas county appointing the plaintiff as receiver of the Order of the Iron Chain was void for want of notice required by the statute to be given in such cases, and that the plaintiff has not, therefore, the legal right to sue. The petition alleges that on the 7th day of January, 1904, in the action of James H. Womack against the Order of the Iron Chain, he was duly appointed receiver of its property, etc., and authorized to bring any action for the collection of any property of, or debts due to, such Order of the Iron Chain. There was a further allegation that the Order of the Iron Chain was organized under the laws of the state of Minnesota; that its home office was in the city of Winnebago, in said state, prior to the 11th day of November, 1901, since which time its home office and all its property had been in the city of Omaha; that the defendant Spinney had since said date been the supreme chancellor of said order. These allegations were met in the answer by statements that the district court was without jurisdiction, and that the only

notice served in said case was upon the defendant Spinney as supreme chancellor; that said Spinney was never supreme chancellor of said order and never acted as such. The new matter in this answer was controverted by reply, and the plaintiff introduced in evidence the order appointing him as receiver and the bond showing his proper qualification. The order contains a finding that due and legal notice of the application for the appointment of a receiver was given to the defendant according to law. There was no further proof as to the giving of notice of the application for the receiver. The recital of jurisdictional facts in the order appointing a receiver is *prima facie* evidence of the existence of such facts. *Edee v. Strunk,* 35 Neb. 307; *Hagerman v. Thomas,* 1 Neb. (Unof.) 497. There being no evidence to rebut this presumption, it must prevail.

5. The defendants contend that the courts of this state cannot administer the affairs of a foreign corporation, and that the district court for Douglas county had, therefore, no jurisdiction of the subject of the action. Where the general administration of the assets of an insolvent corporation is proceeding in the state of its creation, there are good reasons, founded on the principles of judicial comity, why the courts of another state should not appoint receivers of such of its assets as may be found in its jurisdiction; but the impounding of assets of the debtor by means of a receiver being in the nature of a proceeding *in rem,* it is believed that no principle can be suggested which disables a court of equity from taking that course with the assets of a non-resident debtor, corporate or unincorporate. 5 Thompson, Corporations, sec. 6861. The power to appoint a receiver of the assets of a foreign corporation is constantly exercised. 5 Thompson, Corporations, sec. 6861; 3 Cook, Corporations (5th ed.), sec. 865. That a court should not appoint a receiver to administer the internal affairs of a foreign corporation is a very general rule, the reason for which is that the court cannot obtain control of all the property, books, records and

members of the corporation so as to do full justice be-
tween all the parties interested, but the operation of this
rule ceases when the reason for it no longer exists, and
whatever might be the objection to appointing a receiver
for the property of a foreign corporation found in this
state where such property is only part of its assets, and
where the books and records and officers of such corpora-
tion are beyond the process of the court, they do not apply
in this case. Here all the assets, books and records were
brought into this jurisdiction. Here the defendants as-
sumed to exercise the power and authority of the foreign
corporation. No assets, no books, no person assuming to
act as its officer remained in the state of its creation.
Clearly the courts of this state, in which all that remained
of the Order of the Iron Chain had been brought by these
defendants, would be better able to take jurisdiction of
an action by its beneficiaries and members than would the
courts from the state from which it was abducted. 6
Thompson, Corporations, secs. 8010, 8011. There nothing
remained for the jurisdiction of that state to act upon, no
funds, no records, and no officers, but those who had
abdicated their authority and ceased to act for the order.
None of the ordinary reasons why the courts of this state
should not take jurisdiction of these assets remained, but
whether the suit in which the receiver was appointed is
considered as one to subject the assets of the foreign cor-
poration found in this state to the payment of its debts,
or whether it be considered as a suit to administer and
wind up the affairs of such corporation, every reason ex-
ists why the courts of this state should take jurisdiction.

We therefore conclude that the judgment of the district
court was right, and recommend that it be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing
opinion, the judgment of the district court is

AFFIRMED.