CORN LAND FARMS COMPANY, APPELLEE, v. CHARLES BARCUS
ET AL., DEFENDANTS: W. J. DOHERTY, APPELLANT.

FILED MARCH 25, 1921.    No. 21397.

1. Sales: AUCTION SALE: WARRANTY OF TITLE. Where one was acting
   as a clerk of an auction sale, the fact of his employment and the
   exercise of the duties incidental thereto do not constitute him a
   warrantor of the title or ownership of the property sold at the sale.

2. ——: ——: ——: LIABILITY OF CLERK. When the clerk of
   an auction sale receives, as such clerk, money from the purchaser
   of stolen property sold at said sale, in payment of the property
   purchased, and the clerk pays the money to the person who
   offered and procured the sale of the same, believing him to be the
   true owner, and the purchaser, previous to the sale, knew who
   offered the articles for sale and that he purported to be the owner
   thereof, *held*, the clerk was not liable to the purchaser for the
   amount so paid.

APPEAL from the district court for Wheeler county:
BAYARD H. PAYNE, JUDGE. *Reversed and dismissed.*

*J. M. Shreve* and *W. J. Hammond,* for appellant.

*A. L. Bishop* and *John E. Kavanaugh,* contra.

TIBBETS, C.

This action was brought originally by the plaintiff, a
corporation, against Charles Barcus, George Thompson,
Chambers State Bank, a corporation, and W. J. Doherty,
in the county court of Wheeler county, Nebraska, to re-
cover for the purchase price paid for a span of stolen mules
sold at public auction on or about the 19th day of Sep-
tember, 1915, in Holt county, Nebraska. Judgment was
rendered against the defendants and each of them in the
county court, and the defendants, except Barcus, appealed
to the district court for said county, and the case was
therein dismissed by plaintiff as to George Thompson.
The action then proceeded against the defendant bank and
Doherty. The case was tried upon a stipulation, which

in substance is that the allegations contained in paragraphs 1 and 2 of the plaintiff's petition are true. Paragraphs 1 and 2 referred to the fact that the plaintiff is a corporation, and that the defendant Chambers State Bank is a banking corporation, and that part of said business of said bank is the purchase of sale paper and the conducting as clerk and distribution of moneys received at public sales, and that W. J. Doherty is the cashier of said bank.

"It is further stipulated and agreed that on Oct. 1st, 1915, one W. H. Johns called a public sale and conducted such public sale, and that the defendant W. J. Doherty was the clerk of said sale, and that said W. J. Doherty is and was cashier of the Chambers State Bank. It is further agreed that the Chambers State Bank had agreed to purchase all notes taken from purchasers at said sale that might be recommended by said W. J. Doherty. It is further agreed that said W. J. Doherty collected all money paid at said sale and that he charged a commission for the collection thereof. It is further agreed that on the first day of October the defendant Charles Barcus brought a team of mules to where said sale was being conducted, and that said mules were stolen property and the property of A. C. Thompson. It is further agreed that after his arrival there the plaintiff, acting through its duly authorized agent, one Watson, attempted to purchase said mules from said Barcus, but was unable to do so; that thereafter the said Barcus obtained the consent of said Johns to have said mules put up and sold at said sale. It is further agreed that after obtaining said consent from said Johns said Barcus entered into an agreement with said W. J. Doherty by which said Doherty agreed to purchase any paper that might be given for the purchase price of said mules, and that he would pay a commission of $3.00 to said W. J. Doherty if cash was paid for said mules; that said mules were put up at auction and sold to the plaintiff for the sum of $295; that the plaintiff, acting through its manager and agent, said Watson, made a check to W. J. Doherty for said $295.

"It is further agreed that said W. J. Doherty charged $3.00 for his services and made a check payable to George Wright, who was in fact Barcus, and did so for the purpose of making a distribution of the moneys received at said sale for said mules. It is further stipulated and agreed that no representations as to the value, character or ownership of said mules was made by said W. J. Doherty or by the said Chambers State Bank to the plaintiff, its agent Watson, or to any other person, except such as is under the law and the facts herein set forth. It is further stipulated and agreed that neither said W. J. Doherty nor said Chambers State Bank had any notice or knowledge that said mules were not the property of said Charles Barcus; and that the owner of said property, A. C. Thompson, retook his property from the plaintiff in this action.

"It is further stipulated and agreed that said W. J. Doherty and the Chambers State Bank believed, at the time of the transaction wherein the plaintiff purchased said mules, that said mules were the property of said Charles Barcus, or George Wright, as they then believed his name to be."

The court, upon the stipulation made, found in favor of the plaintiff and against the defendant W. J. Doherty, and dismissed the action as to the Chambers State Bank.

We are constrained, after a thorough examination of the authorities cited by the parties, to hold that the court was in error in rendering the judgment that it did as against Doherty. Doherty was acting as clerk of the sale; his duties were to keep a record of the purchasers, pass upon the notes taken as far as the bank was concerned, take such moneys as might be paid in, and pay it out to the parties who sold the property.

The point on which the court largely bases its judgment is in his finding that Barcus, the pretended owner, arranged with the defendant Doherty to take any paper that might be offered for said mules, or to handle the sale of the mules for a *per centum* of cash that might be paid

for the same under the same terms that he was conducting said sale. In the first place, there was nothing contained in the stipulation to the effect that Doherty was conducting the sale; in fact, it was not Doherty's sale in any sense of the word, and the stipulation is, as regards Doherty's connection with the sale, that Doherty agreed to purchase any paper that might be given for the purchase price of said mules and would get a commission of $3 if cash were paid for the same. It was unwarranted in our opinion that from that part of the stipulation the court could draw the conclusion that it did.

In no event and under no condition, nor under any theory that we are able to perceive was defendant, as clerk of the sale, authorized or empowered to guarantee the title of any property that might be sold, or become liable therefor under the stipulation of facts herein. Appellee has cited us to several authorities in support of its position and it cites us to 6 C. J. 844, sec. 63, in support of the fact that "an auctioneer who sells property for one who has no title and pays over to his principal the proceeds is liable to the real owner for the conversion, even though such auctioneer acts in good faith, and without knowledge of the defect of title."

Plaintiff has proceeded upon the theory that the duties and liabilities of the clerk are the same as those of the auctioneer. The stipulation provides that the clerk shall act for Barcus in the sale of the mules the same as he had in the sale of other property, which was, to take in the money and pay it out to the parties whose property was sold. He had no knowledge presumptively whose property was being sold until announced by the auctioneer. The duty of the auctioneer was to inform him whose property was sold, the amount for which it was sold; and, in passing upon the notes he acted, not as the agent of the auctioneer, but as agent for the bank, which would purchase these if approved by defendant. We do not believe that the same rule would apply to one occupying a purely clerical position as would apply to one who was conducting the sale

as auctioneer. The purchaser knew, or presumptively knew, at least, what the duties of the clerk consisted of when it paid the money to him, and to whom it was to be paid; plaintiff paid it for the benefit of the party who sold the property, Barcus or Wright.

It appears to us that the defendant Doherty, in the position in which he acted in receiving the money, keeping track of the sale, and passing upon the notes offered, was justified in turning the money over to the party who presented the mules for sale, and especially in view of the fact, as in the present instance, that the purchaser at the auction sale had been negotiating with Barcus, or Wright, for the purchase of said mules, and knew Barcus was claiming to be the owner and to have the legal title to them. Consider, for argument's sake, that the rule applied to auctioneers applies to clerks. That brings this case squarely within the rule laid down in the case of *Mercer v. Leihy*, 139 Mich. 447, and the reasoning in that case is conclusive as to the situation of the defendant in the present case. Many of the principles involved in the cases cited by plaintiff were discussed and distinguished in the *Mercer* case. The principal distinguishing feature between the *Mercer* case and the case at bar was that the auctioneer who was sued was selling unknowingly stolen property, and Mercer and Lane were bidding on them. The auctioneer, thinking the bystanders might consider that Mercer and Lane might be bidding on their own horses, announced to the public: "These are not Mr. Mercer's and Lane's horses. They belong to another party." He looked around and did not see the man in the audience, and said: "Where is the man who owns these horses?" The man stepped up and said, "Here I am." That court held: "Where an auctioneer discloses the fact of agency and his principal, the law presumes that he does not contract upon his own behalf, but for the principal." In the instant case, while the auctioneer did not announce for whom the property was being sold, it was immaterial, as the plaintiff's agent knew, as a matter of fact, as heretofore stated, who was the pretended owner.

and, as far as any declaration of the ownership was concerned, it was unnecessary as to him; there was some diligence required upon his part.

In the case cited by plaintiff (*Koch v. Branch & Crookes,* 44 Mo. 542, 100 Am. Dec. 324) the court therein stated: "No one should buy property without good reason to believe that the seller has a right to sell it." Also the last-above cited case is one where the question of agency is involved and the extent of such agency. Suppose in the instant case the plaintiff had handed the money to a bystander, rather than to the clerk, to be delivered to the pretended owner of the mules, would it be presumed that the bystander would have become liable in delivering the money to the pretended owner? When the purchaser delivered the money to Doherty he knew, or should have known, that that money was to be delivered to Barcus, as he knew that Barcus pretended to be the owner of these mules and was offering them for sale.

There is no decision that we are able to find bearing directly upon this question, but reasoning from analogy and the usual rules as to the liabilities and responsibilities of an employee or a person acting in the capacity of a clerk, we are convinced that the judgment of the district court was wrong and should be reversed and the case dismissed, which we recommend.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the case dismissed, and this opinion is adopted by and made the opinion of the court.

REVERSED AND DISMISSED.