STATE SECURITIES COMPANY, A CORPORATION, APPELLANT,
v. WILLIAM SVOBODA ET AL., APPELLEES.

110 N. W. 2d 109

Filed July 14, 1961.  No. 34901.

*Ginsburg, Rosenberg & Ginsburg, Norman Krivosha,*
and *W. O. Baldwin,* for appellant.

*Harvey W. Hess,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

Plaintiff and appellant State Securities Company, a
corporation, licensed under the Industrial Loan and In-
vestment Company Act, brought this action for damages

for conversion of certain personal property upon which it held a mortgage against the defendants and appellees William Svoboda and William Svoboda, Jr., individually, and as a copartnership under the name of Svoboda & Sons, auctioneers, who sold the same at the request of the owner and mortgagor Arnold Tambke without plaintiff's knowledge and consent.

Trial was had to a jury. At the trial most all of the facts were admitted, stipulated, or uncontroverted, leaving no substantial matter in dispute. The plaintiff's note and mortgage, dated December 16, 1954, and filed December 20, 1954, in the proper clerk's office were all proved as alleged. There was due and unpaid thereon $379.58, on the sale date which was shown to be March 7, 1955. A tractor and eight other items of farm machinery which were sold for $519.50, were in the plaintiff's mortgage and the sale price was proven to be their value. The sale was held on the premises of Lloyd Orth who sold his property ahead of that brought by Tambke. The defendants admitted acting as auctioneers for Tambke and soliciting for the bids and knocking off the property to the bidders. The property of Tambkes was separately advertised as belonging to him. Tambke was present throughout the sale, demonstrated the tractor, and acted about the property as owner. The sale was clerked by the Thayer County Bank through its cashier and president. The Thayer County Bank had a chattel mortgage on the tractor, and most of the other items of substantial value in the plaintiff's mortgage, together with one or two other small items. Its mortgage which was introduced in evidence was both dated and properly filed in May 1954, and was first in priority. The Thayer County Bank, on receipt of the sale price of $519.50, deducted first the costs of the sale in the amount of $23.96, and the amount of its mortgage of $209.40, which satisfied it in full. The mortgage note was delivered to Mrs. Tambke with a check payable to the Tambkes for the balance of $286.14. At

that time neither the Thayer County Bank nor its officers, nor the defendants, knew of the plaintiff's subsequent lien.

At the conclusion of the evidence the plaintiff moved the court for a directed verdict. The motion was overruled. Thereupon, the defendants moved the court to dismiss the plaintiff's action or direct a verdict for the defendants. The motion was sustained and a judgment was entered dismissing the plaintiff's action and taxing the costs to the plaintiff.

A motion for new trial being overruled, the plaintiff appeals to this court, assigning as error the overruling of plaintiff's motion and the sustaining of defendants' motion for directed verdict. Also it is assigned that the trial court erred in failing to find as a matter of law that defendants as auctioneers and agents of the mortgagors were liable to the plaintiff mortgagee for damages resulting from the tortious conversion; and that it erred in finding the defendants were released from liability by virtue of the disclosure of their principal to the audience at the auction which did not include the plaintiff mortgagee.

The defendants argue that plaintiff failed to properly plead a special ownership in the property which would entitle it to maintain conversion, and also that the holder of the second mortgage could not maintain conversion against the auctioneer where the first mortgagee of a past-due mortgage received the purchase money and deducted therefrom the amount due on its mortgage and paid the surplus thereof to the mortgagor.

The defendants' claim that the plaintiff's petition was insufficient cannot be sustained. Defendants cite several cases, including Raymond Bros. & Co. v. Miller, 50 Neb. 506, 70 N. W. 22; Locke, Huleatt & Co. v. Shreck, 54 Neb. 472, 74 N. W. 970; and Hill v. Campbell Commission Co., 54 Neb. 59, 74 N. W. 388, where the facts constituting the special ownership or the right of immediate possession were not set out or were insuf-

ficiently set out. In some of the cases, it was held that the conclusions stated in the words of the statute were not sufficient. In other cases, the conditions in the chattel mortgage were not shown to have been broken entitling the plaintiff to immediate possession.

In the instant case copies of the mortgage and note were attached to the petition of the plaintiff and made a part thereof. It was pleaded that the defendants acting for and on behalf of the mortgagor Tambke proceeded to sell, and did sell, the mortgaged property to various purchasers and assisted in the disposition of the property. The mortgage provided that, "if any attempt be made to dispose of or remove said property from the county * * *, said mortgagee is hereby authorized to enter upon the premises where the said property may be * * * and remove and sell the same in any manner the said mortgagee may see fit * * *." The petition alleges that the mortgagor did not pay the installment due on January 26, 1955, before the sale and was thereafter at all times in default. The petition, with the mortgage set out as a part thereof, pleads the facts sufficiently and it is not necessary to set out the conclusions of the pleader. Schmidt v. Village of Papillion, 92 Neb. 511, 138 N. W. 725. In 10 Am. Jur., Chattel Mortgages, § 181, p. 836, it was said: "A junior mortgagee who has obtained possession of the property can maintain an action for trespass or trover against a stranger who interferes with his rights. Even though he is not in possession, it is the more general rule that he can maintain an action in replevin or for conversion against the mortgagor or any person other than the senior mortgagee for any taking of the property which is in conflict with his rights as junior mortgagee." The footnote there states as follows: "The basis of the rule is that a junior mortgagee after condition broken is entitled to the possession of the property as against the whole world except the holder of the senior mortgagee (sic). Under this rule an attaching creditor of

the mortgagor stands in the shoes of the mortgagor as respects his rights against a possessory action by the junior mortgagee. Annotation: 43 A. L. R. 389; Ann. Cas. 1916A, 865." It is apparent in this action there was an excess over the first mortgage and plaintiff has pleaded and may maintain an action for conversion.

By great weight of authority it has been held that an auctioneer who sells mortgaged property at an auction at the request of the mortgagor without the consent or knowledge of the mortgagee converts the mortgaged property and is liable to the mortgagee in conversion for the damages sustained. Bunn v. Walch, 54 Wash. 2d 457, 342 P. 2d 211; Allred v. Hinkley, 8 Utah 2d 73, 328 P. 2d 726; Morin v. Hood, 96 N. H. 485, 79 A. 2d 4; First Nat. Bank of Pipestone v. Siman, 65 S. D. 514, 275 N. W. 347; Birmingham v. Rice Bros., 238 Iowa 410, 26 N. W. 2d 39, 2 A. L. R. 2d 1108; Kearney v. Clutton, 101 Mich. 106, 59 N. W. 419, 45 Am. S. R. 394; Eureka Spring Sales Co. v. Ward, 226 Ark. 424, 290 S. W. 2d 434; 5 Am. Jur., Auctions, § 60, p. 489; 7 C. J. S., Auctions and Auctioneers, § 13c, p. 1270; Annotation, 20 A. L. R. 135. There are many other similar cases in other sister states.

In the jurisdictions following the majority rule the good faith of the auctioneer and his lack of knowledge is not a defense to the action. Kearney v. Clutton, *supra;* Morin v. Hood, *supra.*

Though there are no Nebraska cases which precisely cover the case we are now considering, there are older cases which quite clearly indicate that this court has in the past considered the majority rule to be the law here. In Hill v. Campbell Commission Co., *supra,* it was held that one who converts the property of another is liable therefor and that everyone who aids and assists in the conversion by a third person is liable for its value. This was a conversion action brought by a mortgagee. In regard to the question of knowledge as affecting liability, this court there said: "The eighth instruction

given at the request of the defendants was bad, since it exonerated them from liability if they acted in good faith. If one sells the chattels of another without authority so to do, the act cannot be made any the less a conversion by proving that he acted in good faith, believing himself to be their owner, or was the agent of one whom he regarded to be the owner." In McCormick v. Stevenson, 13 Neb. 70, 12 N. W. 828, this court held that a person who aids in conversion of property is responsible to the owner for its value. To the same effect, see Peckinbaugh v. Quillin, 12 Neb. 586, 12 N. W. 104, wherein it was held that the mortgagee may replevin property taken at the suit of a creditor of a mortgagor or can sue for its value in conversion; and that in such a case the attorney for the creditor who advised and assisted in the conversion was liable also. In Starr v. Bankers Union of the World, 81 Neb. 377, 116 N. W. 61, 129 Am. S. R. 684, it was held that one who aids and assists in the wrongful taking of chattels is liable though he acted as agent of another. In Story v. Robertson, 5 Neb. (Unoff.) 404, 98 N. W. 825, it was likewise stated that the intention or ignorance of law of the defendants made no difference.

With the weight of authority of the courts of sister states holding an auctioneer liable in conversion on the sale of mortgaged goods without the consent of the mortgagee regardless of his good faith, and in view of the Nebraska cases, this court cannot adopt the minority rule without a very cogent reason.

It appears from the bill of exceptions that the trial court considered that its decision was dependent on the presence of the mortgagor Tambke at the sale, the disclosure of his presence and ownership of the property sold, and the demonstration by him of the tractor.

Defendants cite cases, many of which are not in point. They cite Corn Land Farms Co. v. Barcus, 105 Neb. 869, 182 N. W. 487, 23 A. L. R. 119; and Mercer v. Leihy, 139 Mich. 447, 102 N. W. 972. These were actions brought

by a purchaser against the auctioneer where either the mortgagor or supposed owner was present, or was identified as the owner at the sale. In such a case the action is on a warranty, express or implied. That action sounds in contract. It is well-established law that as a general rule an agent acting for a disclosed principal is not liable on the contracts of his principal. See 2 Am. Jur., Agency, § 315, p. 247, which reads in part as follows: "If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone, unless credit has been given expressly and exclusively to the agent, and it appears that it was clearly his intention to assume the obligation as a personal liability and that he has been informed that credit has been extended to him alone. * * * Ordinarily, an agent is not liable on express or implied warranties on the part of the principal, although he may, if he sees fit, for a good consideration, make a personal contract of warranty which will be binding and enforceable even though the principal has also made a similar warranty."

In actions by the mortgagee or a real owner against an auctioneer for selling mortgaged property or selling property for one without authority of the real owner, the action is based on tort and the rule of agency is quite different. See 2 Am. Jur., Agency, § 324, p. 254, where the text reads as follows: "The broad statement is frequently made that in torts the relation of principal and agent does not exist. This statement perhaps requires some qualification, yet it is declaratory of a more or less general principle. Generally speaking, the fact that one is acting as agent for another is no defense to any liability to third persons for tortious acts, although the principal may himself be liable."

The defendants in their answer set out that the plaintiff was estopped by reason of the disclosure at the sale by the auctioneer and Tambke that the property belonged to Tambke who was then present at the sale.

Obviously estoppel does not apply. The officers and agents of the plaintiff, or any of them, were not at the sale and knew nothing of it. They did not say or do anything, nor stand by in silence, while the auctioneer or Tambke said or did anything by which the plaintiff might thereafter be estopped to speak the truth.

The plaintiff is not relegated to its action to recover the mortgaged property. Alter v. Bank of Stockham, 53 Neb. 223, 73 N. W. 667. In the case before us only one purchaser testified. He did not buy all the property. It would seem that in this case it would have required several actions. Neither is it necessary that plaintiff exhaust its remedies against the mortgagor.

The defendants cite a few cases of the courts of sister states, holding that an auctioneer or warehouseman was not liable to a mortgagee or real owner for a sale without their consent where they were innocent agents asserting no interest in the mortgaged property or ownership against the real owner. Abernathy & Long v. Wheeler, Mills & Co., 92 Ky. 320, 17 S. W. 858, 36 Am. S. R. 593; Frizzell v. Rundle & Co., 88 Tenn. 396, 12 S. W. 918, 17 Am. S. R. 908; Blackwell v. Laird & Lang, 236 Mo. App. 1217, 163 S. W. 2d 91; Cresswell v. Leftridge (Mo. App.), 194 S. W. 2d 48. These cases represent a minority rule. The rules there expressed are not consistent with previous Nebraska cases and they are not followed by us in this case.

It follows that the auctioneers who assisted in the conversion by sale of the mortgaged property are liable to the plaintiff mortgagee therefor. Their good faith and lack of knowledge of the plaintiff's mortgage are not a defense to the action. Neither is it a defense that the mortgagor was present and was identified as the seller.

The measure of damages is the value of the property at the time and place of sale after the reduction by the payment of the first mortgage claim and the costs of sale for which the first mortgage expressly provided.

The plaintiff having moved for a directed verdict

which was erroneously denied, and the judgment of dismissal having erroneously been entered, a judgment in favor of the plaintiff should be entered below. Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144; Lynch v. City of Omaha, 153 Neb. 147, 43 N. W. 2d 589.

The judgment of the district court is reversed and the cause remanded with directions to enter judgment for the plaintiff and against the defendants in the amount of $286.14, with interest at 6 percent per annum from March 7, 1955.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., dissenting.

To me it is not too material whether the auctioneer was the agent of the owner or a principal. The ultimate foundation question is: Was it a conversion?

I have been unable to see where the mortgagee was deprived of any right it had by the sale of this property.

The following quote from 89 C. J. S., Trover & Conversion, § 48(b), p. 554, states my thought—to constitute a conversion the lienholder must have been *deprived of a right:* "A wrongful sale of goods whereby a person who has a part interest therein, or a lien thereon, *is deprived of his right,* is a conversion whether the wrongdoer is an owner of another part or a lienholder, or a stranger to the property."

The same text is in 65 C. J., Trover and Conversion, § 50, p. 39.

YEAGER, J., dissenting.

I respectfully dissent from the majority opinion in this case, and so that the position for which I contend may not be misunderstood I am dealing with the subject matter in detail.

This is an action by State Securities Company, a corporation, plaintiff and appellant, to recover damages for alleged conversion of personal property from William Svoboda, Billie B. Svoboda, also known as William Svoboda, Jr., and Svoboda and Sons, a partnership, defendants and appellants.

There was a trial of the case to a jury. The case however was not submitted to the jury. At the conclusion of the evidence a motion made by the defendants in the alternative for a directed verdict or for judgment in their favor was sustained. From this ruling the plaintiff has appealed.

There is no substantial dispute as to what the record in this case discloses. The record of the pleadings and evidence discloses that on and prior to March 7, 1955, Arnold Tambke and Eula Tambke were the owners of certain farm machinery and other personal property; that the Thayer County Bank, Hebron, Nebraska, had a chattel mortgage on this property; that the plaintiff also had a chattel mortgage thereon which was junior to that of the Thayer County Bank; that on March 7, 1955, the mortgage of the plaintiff was in default; that both mortgages provided that in case of default the mortgagees were entitled to take possession of and dispose of the property; that without notice to the plaintiff the farm machinery described in the mortgages was sold at a farm sale at which the defendants acted as auctioneers; that the Thayer County Bank had no notice of plaintiff's mortgage; that officers of the bank acted as clerks at the sale; and that after the sale, out of the proceeds the Thayer County Bank received sufficient to pay what was due it under its note and mortgage and the balance was paid to the Tambkes.

It is specifically pointed out that the evidence discloses without dispute that Arnold Tambke attended the sale; that there he demonstrated a tractor which was a part of the property sold; that the defendants, before the sale was made, announced and advertised that it was the property of and was being sold for the Tambkes; and that the defendants received nothing from the sale except an auctioneer's fee. On the trial the following statement was made by the court which was acceded to by plaintiff's attorney: "Thereupon the plaintiff, in open court, states that he concedes that the defendants

announced at and prior to the sale of the Tambke property set forth in plaintiff's petition, the defendants announced that the property to be sold was the property of Arnold Tambke, and that during said sale Arnold Tambke demonstrated a tractor, which was one of the articles listed, and acted about the said property as the owner thereof."

The plaintiff contends in five assignments of error that the judgment of the district court should be reversed. On the basis of these it urges also that a judgment for damages sustained should be rendered in its favor.

Although there are five assignments of error the determination to be made by this court depends upon the question of whether or not an auctioneer under facts such as existed in the circumstances disclosed by this record shall be held as a converter and be required to respond in damages for conversion of property in an action by a mortgagee of personal property where such mortgage has been properly placed of record.

It is asserted by the plaintiff, and the assertion is correct, that by the clear weight of authority the auctioneer is liable under such circumstances as these, and the fact that the owner was present at the sale, was identified as the owner by the auctioneer, and the auctioneer acted only as the spokesman in making the sale and handled no funds, would not destroy this legal attitude and viewpoint.

It should be pointed out however that while this represents the majority rule, there is a minority view, and also that the majority rule fails to contain any expression from many jurisdictions.

If this rule is to be accepted it becomes obvious that the judgment of the district court was erroneous and the plaintiff was entitled to a directed verdict and a judgment thereon in its favor.

The rule has been neither accepted nor rejected in this jurisdiction. In Corn Land Farms Co. v. Barcus, 105 Neb. 869, 182 N. W. 487, 23 A. L. R. 119, in an obiter

dictum statement, this rule was recognized but it had no controlling significance in the determination of any question before the court. The question before the court was that of whether or not a clerk at an auction was liable as a guarantor of title to property sold. In the opinion in recognition of the rule, it was said: "Plaintiff has proceeded upon the theory that the duties and liabilities of the clerk are the same as those of the auctioneer. * * * We do not believe that the same rule would apply to one occupying a purely clerical position as would apply to one who was conducting the sale as auctioneer."

In the light of a firm and fixed view that the majority rule in its all-inclusive aspects is not reasonable, and is in conflict with another well-recognized rule relating to duties and liabilities of auctioneers which appears to meet the demands of reason and justice, the majority rule should be rejected for those instances wherein, as here, the auctioneer was a mere voice for the owner who was named and pointed out, and was present; where the property was at hand, observed, and inspected; where no pertinent information was in the possession of the auctioneer and withheld; and where the sole basis of holding that the auctioneer is guilty of conversion is his failure to inspect the official records to ascertain whether or not the property put up for sale was subject to a chattel mortgage.

This is in conformity with what is termed the minority rule. The minority rule is asserted in Abernathy & Long v. Wheeler, Mills & Co., 92 Ky. 320, 17 S. W. 858, 36 Am. S. R. 593; Frizzell v. Rundle & Co., 88 Tenn. 396, 12 S. W. 918, 17 Am. S. R. 908; Blackwell v. Laird & Lang, 236 Mo. App. 1217, 163 S. W. 2d 91; Cresswell v. Leftridge (Mo. App.), 194 S. W. 2d 48.

In Frizzell v. Rundle & Co., *supra,* it was said: "Defendants having neither actual or constructive notice of the mortgage, and having in the whole matter acted only as the innocent agent and factor of the mortgageor

(sic), with whom the possession had been left, are not guilty of conversion, and the judgment is affirmed."

In Abernathy & Long v. Wheeler, Mills & Co., *supra,* in dealing with a like situation, it was said: "In such case the warehouseman asserts no interest in the goods or right to them, hostile to the mortgagee or true owner; he simply acts as the custodian and mouthpiece of the apparent owner." Recovery against the auctioneer was denied.

In the case of Cresswell v. Leftridge, *supra,* the reasoning contained in the three preceding cases was commented on with approval. From an examination of the majority and the minority rules it appears that reason supports the latter. It is difficult to see why an auctioneer should be held liable as a converter in an instance, such as the one being considered here, where he has made a full disclosure with the claimed owner present and he acts only as the mouthpiece of the owner. The effect of doing so is not to allow recourse against him for some wrong which he has committed but to arbitrarily impose a liability on him for the wrong of another. If instead of the auctioneer acting as mouthpiece the owner himself had acted, would any liability attach to the auctioneer? No one would say so. Then from what source comes a meritorious reason for holding the auctioneer (mouthpiece) liable?

The majority rule is not only on its face fallacious but it is also contrary to and inconsistent with a related situation pertaining to liability of auctioneers. If an auctioneer is liable to a mortgagee under circumstances such as exist in this case, why should he not be liable to a purchaser who has been damaged on account of the sale of the mortgaged property? He however ordinarily is not.

The general rule as stated in 5 Am. Jur., Auctions, § 57, p. 488, is as follows: "Accordingly, an auctioneer selling for a known principal is not responsible to the buyer for the title, in the absence of his own affirma-

tive agreement, for an auctioneer does not impliedly warrant the title of his vendor."

The rule is stated in 7 C. J. S., Auctions and Auctioneers, § 13 b (1), p. 1269, as follows: "Generally speaking, an auctioneer is not personally liable to third persons where his principal is disclosed; but he must keep within the limits of his agency, and, like any other agent, may make himself personally liable by expressly pledging his own responsibility."

By comparison of this rule with the majority rule with reference to the liability of an auctioneer to a mortgagee it becomes clear that the two are definitely inconsistent. Reason fails to harmonize a deprivation of relief against the man who has paid his purchase money and the grant of relief to a mortgagee. Both have an action against the seller and in addition the mortgagee has the further right of recovery of the property itself for the purposes of foreclosure of his recorded mortgage.

The simple answer is that neither should be treated as having been wronged by the auctioneer, since in reason nothing has been done by the auctioneer to the prejudice of either of them.

In the light of the observations made herein it is my opinion that an auctioneer who in good faith and without notice of a mortgage thereon sells personal property at auction, which is in fact subject to a chattel mortgage, for a principal whose identity has been disclosed, in which property the auctioneer has no interest but acts only as a mouthpiece of the owner, is not liable to the mortgagee for any damage sustained as the result of such sale.

MESSMORE, J., concurs in this dissent.