CHARLES S. REED, APPELLEE, V. NICE-PAK PRODUCTS, INC., A CORPORATION, ET AL., APPELLANTS.

227 N. W. 2d 854

Filed April 10, 1975. No. 39790.

George A. Thompson of Stern, Harris, Feldman, Becker & Thompson, for appellants.

Philip H. Robinson, Jr., for appellee.

Heard before WHITE, C. J., BOSLAUGH, CLINTON, and BRODKEY, JJ., and COLWELL, District Judge.

WHITE, C. J.

In this action for attorney's fees, the District Court held that there was no genuine issue of fact and granted a summary judgment to plaintiff Reed, in the sum of $6,241.28 against both defendants on the basis of an express contingent fee contract between the parties. We reverse and remand the cause for a new trial on the factual issue of the reasonable value of the plaintiff's services.

Unipac, Inc., of Nebraska, became insolvent and defaulted on a contract (purchase order No. 1015) to purchase 5 million alcohol swabs for $31,060 from defendant Nice-Pak Products, Inc., a New York corporation. Defendant Levitt, its New York attorney, accepted Reed's written proposal to represent Nice-Pak against Unipac, "on a fee basis of 20% of the amount *collected* without litigation, and 1/3 of the amount *collected* if litigation is necessary." (Emphasis supplied.)

The pertinent evidence is undisputed. Reed filed suit against Unipac for Nice-Pak on September 17, 1970. This suit never was tried and no money was ever collected from the insolvent Unipac.

A new and unforeseen series of events developed. Midland Medical Supply Company of Lincoln, Nebraska, purchased part or all of Unipac's inventory and on October 23, 1970, placed an unsolicited order for 100,000 swabs and told Nice-Pak that it was assuming Unipac's purchase order No. 1015 for 5 million swabs. Levitt was not satisfied and wanted the whole debt paid at once. Midland and Nice-Pak negotiated, Reed participating for Nice-Pak. The settlement failed. On Levitt's instruc-

tions, Reed filed suit for Nice-Pak against Midland. Midland began placing regular 6-week swab orders, the suit against Midland abated, and Midland, paying cash in advance of each order, subsequently in 1971 and 1972 fully performed Unipac's original purchase order No. 1015.

During the negotiations with Midland for a complete settlement, prior to their resuming performance, Reed, on request from Levitt, advised that "if the matter was settled [with Midland] *as outlined,* my fee would be $1,000.00." On November 1, 1972, just prior to Midland's completed performance, Levitt again inquired of Reed as to his fee. Reed responded, on November 7, 1972, "In due course I will send you a bill. I want to do some thinking about the *time* I spent on the matter." (Emphasis supplied.)

Subsequently, Reed submitted a bill to Nice-Pak for $6,241.28 based on the original contingent fee contract for collection and suit against Unipac. The District Court entered judgment for this amount.

The original contingent fee contract was unenforceable. Nothing was or could be collected from Unipac. Reed was never entitled to a fee because it depended on the recovery of money from Unipac. Nevertheless, Levitt directed Reed to negotiate concerning litigation under an entirely new and unforeseen assumption contract by Midland. Contrary to Reed's contention, we find nothing in the record before us that Reed, Nice-Pak, and Levitt ever agreed or had a "meeting of the minds" that Midland would be substituted for Unipac as a modification of the original fee contract. The evidence clearly indicates the opposite. When Reed was asked what his fee would be if *Midland* and Nice-Pak settled, he replied his fee would be $1,000, a flat sum unrelated to a 33 percent contingent fee, and clearly based on the new situation and the reasonable or quantum meruit value of his services. Confirming this position, Reed, at the end of Midland's performance in November 1972, was again

asked about his fee, responded that he wanted to do some thinking about the *time* he spent on the matter. The time spent by counsel was irrelevant in their original contingent fee contract. Thus Reed's own conduct and interpretation was not only contrary to the express contract obligation, but confirmatory of his own understanding that he would be paid for *time* and value of services.

The interpretation given a contract by the parties themselves while *engaged in the performance* of it is one of the best indications of the *true intent of their contract,* and should be given great, if not controlling influence, and the courts should ordinarily *enforce such construction.* Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448; McLeod v. Crawford, 176 Neb. 513, 126 N. W. 2d 663. Section 25-1332, R. R. S. 1943, requires the record before the court to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Storz Brewing Co. v. Kuester, 178 Neb. 135, 132 N. W. 2d 341.

Accordingly, we hold that Reed is entitled to quasi-contractual or quantum meruit recovery only for time and value of services performed. The extent of this recovery is a genuine issue of material fact which must be resolved on remand by a trial on the merits.

Since a retrial is necessary, we determine the issue of defendant Levitt's personal liability. The District Court also entered a summary judgment against him. It is undisputed that at all times Levitt was acting as an attorney for and as agent contracting on behalf of a disclosed principal, Nice-Pak. Levitt so contends. Generally an agent acting for a disclosed principal is not liable for the contracts of the principal. Imhoff v. House, 36 Neb. 28, 53 N. W. 1032; State Securities Co. v. Svoboda, 172 Neb. 526, 110 N. W. 2d 109; 3 Am Jur. 2d, Agency, § 294, p. 654. Consequently, the defendant Levitt should be dismissed from the action.

The judgment of the District Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.