No. 26,864.

MARY TERNES, *Appellee*, v. C. E. GROVE, *Appellant*.

SYLLABUS BY THE COURT.

CORPORATIONS — *Actions Against — Venue — General Appearance — Who May Question Jurisdiction.* A corporation, organized under the laws of West Virginia, obtained authority to do business in Ohio, and maintained its general office there. In an action brought by it in a district court of Kansas it procured a personal judgment against a citizen of this state. Thereafter a creditors' bill was filed against it in the court of common pleas where its principal office was located. The corporation, by its president, appeared voluntarily and entered its general appearance in writing. *Held,* (1) the privilege of the corporation not to be sued in such an action in a court other than its domicile, West Virginia, was a personal privilege which it could waive, and did waive by the general appearance entered by its president. (2) The question of whether the action was properly brought in Ohio cannot be raised by one not a party to any of the litigation who seeks to enjoin the levy of an execution issued upon the judgment in Kansas.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed November 6, 1926. Reversed.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson* and *William H. Hitchcock,* all of Wichita, for the appellant.

*J. W. Ward, Tom Harley* and *George Siefkin,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to enjoin the sheriff of Sedgwick county from the sale of certain real estate under an execution, for the reasons, generally speaking, (1) that the real property levied upon belonged to plaintiff and not to the judgment debtor, and (2) that the judgment upon which the execution was based had ceased to have force and effect, and gave no basis for an execution. The action was tried to the court, judgment rendered for plaintiff, and defendant has appealed.

The matter, so far as here presented, depends upon whether the judgment had ceased to have force and effect sufficient to be the basis of an execution. Possibly related to this is the question whether the execution was issued upon the request or præcipe of any one having authority to do so. The evidence pertaining to this question is not seriously controverted, and may be summarized as

Corporations, 14a C. J. pp. 1336 n. 54, 1389 n. 31, 38; 32 A. L. R. 1353, 1383; 12 R. C. L. 29. Receivers, 23 R. C. L. 34.

follows: The Motor Securities Company was organized as a corporation under the laws of West Virginia in 1912. On October 20, 1916, upon application previously made, it was authorized to do business as a corporation in the state of Ohio, having its principal place of business at Columbus, Ohio. On November 15, 1917, in an action then pending in the district court of Sedgwick county, Kansas, the Motor Securities Company obtained a personal judgment against J. P. Ternes for $639.32. On November 14, 1918, an execution was issued upon this judgment by the plaintiff, but no property was levied upon. On November 7, 1918, upon a creditor's bill filed in the court of common pleas of Franklin county, Ohio, in which proceeding the Motor Securities Company voluntarily entered its general appearance, an order was made appointing a receiver for the Motor Securities Company. This receiver was directed by the court to take possession of all of the assets of the Motor Securities Company and administer them as the court directed. These assets consisted largely in notes and claims against various persons and corporations throughout the United States. On April 2, 1919, the license of the Motor Securities Company to do business in Ohio was revoked and has never been reinstated. On January 11, 1922, the receiver reported that he had sold and administered all assets of the corporation except claims and notes then uncollected, and that he had an offer of $100 from Leo Lindenberg for all the remaining assets; and on that date the court made an order that the receiver sell all the remaining assets of the corporation to Leo Lindenberg for $100, which sale was effected and the receivership closed. Since this sale the corporation has exercised no corporate activities, but there never has been a formal surrender of the charter or dissolution of the corporation in West Virginia.

On November 14, 1923, upon the præcipe of the attorneys who represented the corporation at the time judgment was obtained and the previous execution issued, and as attorneys for the plaintiff, the execution in question was issued. It seems that the Motor Securities Company was at all times what may be termed a one-man corporation, in that Leo Lindenberg owned all of the stock except qualifying shares for other officials.

Upon the application for a restraining order in this case the plaintiff raised the question of who caused the execution sought to be enjoined to be issued, and called as a witness the attorney who had signed the præcipe. He testified that he represented Leo Lindenberg

and had caused the execution to be issued at his request. Upon the final hearing before the court he testified that he and his firm also represented the Motor Securities Company in so far as such company had any interest in the matter. The trial court concluded the judgment had become dormant when the execution of November 14, 1923, was issued and enjoined proceedings under it.

In support of the judgment of the court below it is contended by appellee that the situs of the judgment in favor of the Motor Securities Company against J. P. Ternes was in West Virginia, the plaintiff in that case being a corporation organized and existing under the laws of West Virginia. It is further contended that the Ohio court had no jurisdiction to appoint a receiver generally for the assets of a corporation domiciled in West Virginia; that such receiver could be appointed only for assets in Ohio, hence that the sale by the receiver of the Ohio court of all the remaining assets of the Motor Securities Company did not and could not include a judgment rendered in Kansas in favor of that company, for the reason that its situs in legal contemplation was in West Virginia. Even if this court should agree with that contention it would not support the judgment of the trial court, for then there would be no sale of this judgment by the receiver—it would still belong to the Motor Securities Company, the West Virginia corporation, and that company has never ceased to exist, as shown by the corporate records of West Virginia. The execution sought to be enjoined was issued upon the præcipe of attorneys who had always represented that company in this case, and, *prima facie* at least, certainly had authority to do so. But it is argued this view cannot be taken, for the authority of the attorney to represent the Motor Securities Company was put in question under R. S. 7-107, and on being interrogated as to whom he represented, he answered that he represented Leo Lindenberg, the purchaser of the judgment from the receiver of the Ohio court; and although that testimony was later amplified to include the claim that he also represented the corporation, it is argued that the trial court took, as the basis of its judgment, the evidence first offered on that subject. So considered it becomes necessary then to determine whether the Ohio court in this case had jurisdiction to direct the sale of this judgment. It will be noted that after its admission to do business in Ohio, at any rate, the general offices of the Motor Securities Company were at Columbus, Ohio, and when the creditor's bill was brought against it in 1918 it appeared by its president vol-

untarily and entered its appearance generally in writing, and thereby submitted itself to the jurisdiction of the court, in so far at least as it was possible for it to do so. The court assumed to have jurisdiction of all of the assets of the corporation wheresoever situated, directed the receiver to take charge of and administer them, and that was done, and the case was finally disposed of by a sale of the remnant of such assets. No stockholder or creditor of the corporation has made any complaint of that action. No official whose duty it is to supervise or regulate corporate conduct, either in West Virginia or Ohio, has ever questioned the procedure. We see no reason why the plaintiff in this action should question it, or what concern it is of the plaintiff. Even if the Ohio proceedings were voidable, it would not make the sale of the remaining assets of the corporation to Leo Lindenberg void, so that an entire stranger to the proceedings, as is plaintiff in this case, one who would be unaffected by it one way or the other, can attack it in a purely collateral manner.

In *Central Trust Co. v. McGeorge*, 151 U. S. 129, an action was brought in the circuit court of the United States of Virginia by a creditor against a corporation created by and existing under the laws of New Jersey, asking for the appointment of a receiver. The defendant company appeared by its president and consented to the appointment of a receiver, and the appointment was made. A number of other creditors intervened. A question was raised as to the authority of the court to appoint the receiver, the action not being in the domicile of the defendant. It was held that the exemption, from being sued out of the district of defendant's domicile, is a personal privilege which may be waived, and which is waived by pleading to the merits, and further held that where the defendant company has submitted itself to the jurisdiction of the court, such voluntary action cannot be overruled at the instance of stockholders and creditors not parties to the suit as brought, but who have been permitted to become such by intervening petition. This ruling followed previous holdings of the supreme court of the United States and has in turn been repeatedly followed. (See cases cited in Rose's notes.)

In *Starr v. Bankers Union of the World*, 81 Neb. 377, it was held:

"Where all the property, books and records of a fraternal beneficiary association organized under the laws of another state are brought into this state, and the business of the association is attempted to be here carried on by per-

sons assuming to act as the officers or agents thereof, the courts of this state have power to appoint a receiver to administer the property of such association."

In 23 R. C. L. 34 it is said:

"It is a general rule that a court will not appoint a general receiver of a foreign corporation, or a receiver to wind up its affairs, if the corporation has no property in the state of the appointing court, and has not appeared or been served with process, and.none of its officers or agents are to be found in that state. A court of equity will not, by means of a receiver, interfere with the purely internal affairs of a foreign corporation, for the reason that the court cannot obtain control of all the property, books, records and members of the corporation so as to do full justice between all the parties interested. It has been held, indeed, that the court has no jurisdiction to appoint a receiver in such a case, but the better opinion is that it is a matter rather of discretion than of jurisdiction. The rule rests more on grounds of policy and expediency than on jurisdictional grounds; more on want of power to enforce a decree than on jurisdiction to make it. There is a radical distinction, however, between an action which seeks to have appointed a receiver of the local property and assets of a corporation in order that they may be preserved from unlawful disposition and waste, and an action for the appointment of a receiver of the corporation. In the former case it is settled that the action will lie, whether a domiciliary receiver has been appointed or not. For jurisdictional purposes there is, of course, no distinction to be drawn between the power to appoint a so-called ancillary receiver and the power to appoint an original receiver. And if a corporation has all its property at the forum, and does all its business there, it would seem that a court of equity might well appoint a receiver to wind up its business affairs." (See, also, *Low v. Pressed Metal Co.*, 91 Conn. 91; *Cunliffe v. Consumers Assn. of America*, 280 Pa. St. 263; and the annotations in 18 A. L. R. 1383 and 32 A. L. R. 1353.)

In this case, although the Motor Securities Company was incorporated under the laws of West Virginia, its head office and principal place of doing business was at Columbus, Ohio, where its books and records were kept. When the creditor's bill was filed the defendant, by its president, voluntarily entered the general appearance of the corporation, and thereby waived its privilege to be sued in West Virginia. The court appointed the receiver and proceeded to administer the assets of the corporation. The plaintiff in this case is in no position to question the validity of that proceeding.

If Leo Lindenberg owned the judgment by virtue of that receiver's sale, he was authorized to have an execution issue in the name of the judgment creditors without filing in the case a written assignment of the judgment. (*Gilmore v. Bank*, 90 Kan. 405, 133 Pac. 726.)

It necessarily follows that the court below was in error in holding

that the judgment had become dormant, or that the execution of November 14, 1923, was not issued on proper authority. Its judgment will be reversed with directions to enter judgment for defendant.