**ARNOLD LIVESTOCK SALES COMPANY, INC., Plaintiff,**

v.

**W. B. PEARSON, Sr., and Northwestern National Insurance Company, Defendants.**

No. Civ. 73–L–185.

United States District Court,
D. Nebraska.

Oct. 16, 1974.

---

Donald H. Bowman, Lincoln, Neb., for plaintiff.

Howard W. Spencer, Broken Bow, Neb., for defendants.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This is an action brought on a bond which was executed under the Packers and Stockyards Act, 7 U.S.C. § 181 et seq. [Act]. Plaintiff Arnold Live-

stock Sales Company, Inc., which is a market agency, claims that it sold five head of cattle to defendant, Mr. W. B. Pearson, Sr., who is a livestock dealer, and that it has never been paid for those cattle. Pursuant to 7 U.S.C. § 204 and the regulations thereunder, Mr. Pearson was bonded by defendant Northwestern National Insurance Company [Northwestern] and plaintiff brought suit upon that bond to recover for the alleged default of Mr. Pearson. Since this is an action upon a bond executed under a federal law, this Court has jurisdiction under 28 U.S.C. § 1352. Hartford Accident and Indemnity Co. v. Baldwin, 262 F.2d 202 (8th Cir. 1958).

The case was submitted to the Court without a jury on stipulated uncontroverted facts, an investigative report and a transcript of an agency hearing.[1] Plaintiff Arnold Livestock Sales Company, Inc., [Arnold] was engaged in the business of buying and selling livestock and was a registered market agency under the Packers and Stockyards Act. The defendant W. B. Pearson, Sr., was engaged in the business of buying and selling livestock and was a registered dealer under the Act. Mr. Pearson was bonded by defendant Northwestern in accordance with the Act. Prior to the transaction in question, Mr. Pearson had been purchasing livestock as the exclusive representative for Kearney Packing Company at several stockyards, including plaintiff's yard. There is a dis-

pute whether Mr. Pearson had paid for some cattle with his own check prior to the transaction in question. However, it is not necessary to resolve this issue because Arnold, Kearney Packing Company and Mr. Pearson agreed in May, 1970, that Arnold, as seller of the livestock, would receive payment directly from Kearney Packing Company.[2] On September 7, 1970, Mr. Pearson bought five cattle from Arnold for a total of $904.27. The sales invoice was made out from Arnold Livestock to Kearney Packing Company. As payment for the animals, Arnold received a check from Holiday Markets, Inc., d/b/a Kearney Packing Company, which was never paid because the account on which it was drawn had insufficient funds. Arnold has never been paid for the cattle and now seeks to hold Pearson and the surety liable for the purchase price.

Since the liability of the surety on the bond depends upon the liability of the principal, the Court must examine Pearson's liability. The parties have disputed whether Pearson bought the cattle as an agent or as a principal, but the evidence is convincing that he purchased as an agent for Kearney Packing Company and that Arnold was aware of the identity of this principal. In May, 1970, Arnold, Pearson and Kearney Packing Company all agreed that payment for Pearson's purchases would come directly from Kearney Packing. Indeed, the cattle in question were invoiced di-

---

1. Plaintiff had filed a complaint on the same matter before the Secretary of Agriculture, a hearing was held and the hearing examiner found that Mr. Pearson had not engaged in the unfair practice of buying cattle without paying for them. This action before the Court is not an appeal from that administrative agency's decision; it is a separate action based upon the bond. The Court finds that the Secretary did not have jurisdiction to hear the complaint involving a single unpaid purchase. Lewis v. Goldsborough, 234 F.Supp. 524, 528 (E.D.Ark.1964); McClure v. E. A. Blackshire Co., 231 F.Supp. 678 (D.Md. 1964). Therefore, the Secretary's findings of fact and conclusions are not binding upon this Court.

2. Arnold claims that the agreement was merely a convenience for Mr. Pearson and that it was not intended to relieve him of any personal financial responsibility. Mr. Pearson claims that the agreement was intended to release him of any such liability. What effect this agreement had upon the personal liability of Mr. Pearson has not been argued by the parties and they have not introduced sufficient evidence to enable the Court to make a finding on that issue. The fact that there was such an agreement, however, is important in that it shows that Arnold knew that Pearson was purchasing livestock as an agent for Kearney Packing Company.

rectly to Kearney Packing and a check was made out to Arnold as payment by Holiday Markets, Inc., d/b/a Kearney Packing Company. It is obvious that Arnold Livestock knew that Mr. Pearson was purchasing cattle as an agent for Kearney Packing Company. *See* David A. Baxter & Sons v. Sofio, 182 Neb. 599, 156 N.W.2d 141, 142 (1968). Consequently, Arnold's claim that Pearson was buying for his own account or for an undisclosed principal must be rejected.

■ Once it has been established that Mr. Pearson was acting as an agent for Kearney Packing Company, the next question is to determine whether he may be held liable for the purchase price. Defendants first argue that Pearson was not a "dealer" within the meaning of the Act. However, they have stipulated that Mr. Pearson was engaged in the business of a livestock dealer "buying and selling for his own account and others in commerce" and was properly registered as such. Therefore, the Court finds that Mr. Pearson was a "dealer." 7 U.S.C. § 201(d).

■ Defendants next argue that the bond did not cover Pearson's activities because he was not acting as a "dealer" in this transaction. In order to be a "dealer" within the coverage of the bond, one must first make a "purchase" and, it is argued, Mr. Pearson was not a purchaser because the consideration from the sale came directly from Kearney Packing Company. Therefore, defendants assert that Kearney Packing Company was the purchaser and not Mr. Pearson. This argument is not convincing. The Secretary has authority to issue regulations concerning the bonding of dealers. 7 U.S.C. § 204. Pursuant to these regulations, a dealer must maintain a bond to secure the performance of his obligations incurred as a dealer. 9 C.F.R. § 201.29 (1974). As required by 9 C.F.R. § 201.31, the bond in question covered "all livestock purchased by [Pearson] for his account and for the account of others." The effect of defendants' argument—only the person who pays for the livestock or who is named as a party to the contract can be a "purchaser"—is that an agent can *never* be a "purchaser" unless he is expressly named as a party to the contract. Such a construction would contradict the plain wording of the regulations and bond and would violate the policy behind such bonds. Since the regulations and bond cover purchases "for the account of others" it is obvious that they contemplate purchases by one acting as an agent. Their language seems to cover all instances where a dealer acts as an agent and the Court can find nothing to indicate that coverage depends upon where the consideration originated. Thus, Mr. Pearson acted as a "dealer" within the meaning of the regulations and bond.

■ The defendants next argue that Pearson, as an agent representing a disclosed principal, may not be held liable as a party to the contract. Under general agency principles, an agent representing a disclosed principal may not be held liable unless he was expressly made a party to the contract. *See, e. g.*, State Securities Co. v. Svoboda, 172 Neb. 526, 110 N.W.2d 109, 113 (1961); Restatement (Second) of Agency, § 320 (1958). Although Mr. Pearson represented a disclosed principal and was not expressly made a party to the sale, the Court nevertheless finds that he should be held liable for the unpaid purchase price. United States Fidelity and Guaranty Co. v. Clover Creek Cattle Co., 92 Idaho 889, 452 P.2d 993 (1969), is on point. In that case, the Supreme Court of Idaho found that the regulations requiring a bond imposed upon a dealer an implied obligation to guarantee payment for all livestock purchased by him. 452 P.2d at 1001–1002. The purpose of the bond was to hold the licensed dealer strictly liable for the purchase price of the livestock. Since the dealer assumed this obligation when he became a registered, bonded dealer, he could be held liable

even though he merely acted as an agent. While this Court is not obliged to follow the *Clover Creek* case, it finds that such reasoning is logical and persuasive and thereby adopts it.

 Another reason for a construction which would impose liability upon the dealer is that it will promote the purpose of the Act. The objective of the bonding requirements is "to assure payment for livestock bought or sold at a stockyard." H.R.No.1048 (1957), U.S. Code Cong. and Admin. News, 85th Cong., 2d Sess., pp. 5212, 5213 (1958). The Act should be construed liberally in order to further its public purposes. Glover Livestock Comm. Co. v. Hardin, 454 F.2d 109 (8th Cir. 1972), reversed on other grounds, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); Bruhn Freezer Meats v. U. S. D. A., 438 F.2d 1332 (8th Cir. 1972). By holding that the dealer guarantees payment for the purchase price of the livestock bought for his account or for the account of others, the Court assures that livestock will be paid for. The stability of livestock sales will be enhanced if a seller need not worry about the solvency of the dealer's principal when he may look to the dealer and his bond for the unpaid purchase price. Under these circumstances it should not matter whether the seller was a market agency or a producer. This construction is a fair interpretation of the statutory language and promotes the purpose of the act and will be adopted by this Court. Since the bond covered the purchase of livestock by Pearson for the account of others, Northwestern must pay the purchase price of the cattle. Plaintiff seeks attorneys fees under 7 U.S.C. § 210(f), but that section does not apply to actions on bonds under 7 U.S.C. § 204 and the Court finds no justification for granting such fees.

A separate order entering judgment for plaintiff shall be entered this day in accordance with these findings of fact and conclusions of law.