**LIBERTY MUTUAL INSURANCE COMPANY, as subrogee of Arbogast & Bastian, Inc. and Liberty Mutual Insurance Company, Plaintiff,**

v.

**BANKERS TRUST COMPANY and Rotches Pork Packers, Inc., Defendants.**

No. 88 Civ. 3421 (RPP).

United States District Court, S.D. New York.

Feb. 12, 1991.

Ballon Stoll & Itzler, New York City by Richard Weinberger, for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, New York City by Harvey Strickon, for defendant Bankers Trust Co.

## REVISED OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and seek damages of $1,445,037.68, plus interest, costs, and attorneys' fees. Defendant Bankers Trust Company ("Bankers Trust") cross moves for summary judgment, pursu-

ant to Fed.R.Civ.P. 56. For the reasons set forth below, plaintiff's motion is granted in part and defendant's cross-motion is denied.

## BACKGROUND

Arbogast & Bastian ("A & B"), now defunct, was a Pennsylvania corporation engaged in the business of purchasing and slaughtering livestock and reselling livestock, meat, meat products and livestock products. Liberty Mutual is a Massachusetts corporation engaged in the insurance business, which on May 20, 1983 issued a surety bond to A & B in the amount of $620,000.00, to ensure payment to farmers for livestock purchased by A & B, pursuant to 7 U.S.C. § 204 and regulations promulgated thereunder. Defendant Rotches Pork Packers, Inc. ("Rotches, Inc."), now defunct, was a New York corporation engaged in the business of cutting and selling meat food products, including dressed hogs, and was a customer of A & B. Defendant Bankers Trust Company ("Bankers Trust") is a national bank with its principal place of business in New York which, on March 25, 1983, entered into an Accounts Financing Agreement to extend a line of credit to Rotches, Inc., together with a security agreement pursuant to which Rotches, Inc. pledged its accounts receivable and certain other property, and for which the requisite U.C.C. filings were made. (Defendant's Exhibit B).

Prior to entering into the financing and security agreements, Rotches, Inc. purchased meat food products from A & B on credit. In March, 1982 it gave A & B a security interest in Rotches, Inc.'s accounts receivable and other personal property. Soon after Bankers Trust entered the line of credit agreement with Rotches, Inc. in the amount of $1 million on March 25, 1983, A & B entered into an agreement with Bankers Trust dated April 28, 1983 ("the Inter–Creditor Agreement") by which A & B subordinated any claims to assets, including accounts receivable, of Rotches, Inc. in favor of Bankers Trust. As consideration, David A. Rotches, the owner of Rotches, Inc., gave A & B a personal guarantee

including a mortgage on his home. Bankers Trust's line of credit enabled Rotches, Inc. to pay accounts payable to A & B and purchase meat food products in greater quantities from A & B. By May of 1984, the Bankers Trust line of credit to Rotches, Inc. had been increased to $2–3 million, which Rotches, Inc. had drawn upon in the amount of $1,835,000, which amount was an outstanding loan as of May 10, 1984.

In April, 1984, David Rotches, with A & B's agreement, undertook oversight of A & B's plant in Allentown, Pa., in an effort to raise the daily hog kill to plant capacity. In early May, 1984, David Rotches closed Rotches, Inc., after claiming to have discovered a course of fraudulent dealing by A & B, and stopped payment on twenty checks of Rotches, Inc. issued to A & B, totalling $818,822.57 and bearing dates ranging from April 27, 1984 to May 5, 1984. On or about May 11, 1984, A & B filed a voluntary bankruptcy petition for reorganization, under Chapter 11 of the Bankruptcy Act, in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("the Bankruptcy Court"). On May 18, 1984, an adversary proceeding was filed on behalf of A & B in the Bankruptcy Court to recover funds from Rotches, Inc. and Bankers Trust. (The proceeding was dismissed without prejudice by stipulation on March 19, 1985). As a result of A & B's bankruptcy, fifty-seven sellers of livestock ("Sellers") who had not received full payment from A & B filed claims totalling $1,445,037.68 for non-payment of livestock deliveries. In September, 1984, the Bankruptcy Court authorized A & B to distribute pro rata to the Sellers a total of $545,960.00. On April 3, 1985, the Bankruptcy Court authorized Liberty Mutual to distribute the total proceeds of the surety bond, $620,000.00, to the Sellers pro rata.

In return for the $620,000.00 distribution, Liberty Mutual received from at least forty seven Sellers a "Release and Assignment," each of which released Liberty Mutual from all further liability under the bond and assigned to Liberty Mutual all rights and causes of action of the Sellers, including those arising under the Packers and Stockyards Act.[1] The total dollar amount of these assignments is unclear but is something less than if fifty seven assignments had been received by Liberty Mutual.[2] Liberty Mutual brings this action based on its rights as assignee of the Sellers' claims under the Packers and Stockyards Act and also based on its right as a subrogee of A & B, now defunct, due to Liberty Mutual's payment of the surety bond.

## DISCUSSION

To grant a motion for summary judgment a court must find that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law because, after sufficient time for discovery, the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *Meiri v. Dacon*, 759 F.2d 989, 997 (2d. Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

1. Plaintiff's Exhibit 18 consists of forty eight Releases and Assignments, one of which lacks a signature page. The forty seven signed Releases and Assignments provide that Liberty Mutual shall hold in trust for the assignors any money it recovers of the remaining unpaid balance on their accounts.

2. The unpaid balance of the Sellers' statutory trust claims is also unclear. Liberty Mutual claims $1,445,037.68 (the total amount of charges filed by the Sellers in Bankruptcy Court), plus interest, fees and costs, making no deduction for A & B's prior disbursement to Sellers of $545,960.00 on September 10, 1984. See Plaintiff's Rule 3(g) Statement, Exhibit 10. This discrepancy is not explained. Liberty Mutual's Complaint filed May 16, 1988 claimed damages of $1,377,186.53, plus interest, fees and costs. This discrepancy is also not explained.

Plaintiff's motion for summary judgment relies on two theories:

First, that the assets (funds and accounts receivable) of Rotches, Inc., owed to A & B and possessed by Bankers Trust, constitute assets of a statutory trust created by Section 206(b) of the Packers and Stockyards Act, codified at 7 U.S.C. § 196(b), to which Liberty Mutual, as assignee of the Sellers, is entitled and to which A & B as trustee of the statutory trust had claims (which Liberty Mutual now asserts as A & B's subrogee). Second, that the assets (funds and accounts receivable) of Rotches, Inc. constitute assets of a Section 196(b) statutory trust of which Rotches, Inc. is trustee and A & B is the beneficiary.

Defendant responds that there is not proof that a statutory trust had been imposed upon A & B by the Sellers; that even if there were a valid statutory trust on behalf of the Sellers, it would not extend (due to the Inter–Creditor Agreement and Rotches, Inc.'s offsetting claims) to assets held by Rotches, Inc. and Bankers Trust; that plaintiff may not amend its complaint to allege that a trust arose between A & B and Rotches, Inc.; that as a matter of law, no such trust could have arisen between A & B and Rotches, Inc. because many transactions between them did not meet the requirements of the statute; and that any claims of A & B are completely subordinated to Bankers Trust's interest by the Inter–Creditor Agreement.

The Packers and Stockyards Act provides in part:

(a) It is hereby found that a burden on and obstruction to commerce in livestock is caused by financing arrangements under which packers encumber, give lenders security interest in, or place liens on, livestock purchased by packers in cash sales, or on inventories of or receivables or proceeds from meat, meat food products, or livestock products therefrom, when payment is not made for the livestock and that such arrangements are contrary to the public interest. This sec-

tion is intended to remedy such burden on and obstruction to commerce in livestock and protect the public interest.

(b) All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers: * * * *Provided*, That the unpaid seller shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within thirty days of the final date for making a payment under section 228b of this title, or within fifteen business days after the seller has received notice that the payment instrument promptly presented for payment has been dishonored, the seller has not preserved his trust under this subsection. The trust shall be preserved by giving written notice to the packer and by filing such notice with the Secretary.

(c) For purposes of this section, a cash sale means a sale in which the seller does not expressly extend credit to the buyer. 7 U.S.C. § 196.

Defendant's contention that no statutory trust was created for the Sellers is ill-founded. Plaintiff submitted as evidence the Decision and Order of the Judicial Officer of the United States Department of Agriculture, dated April 13, 1987 (Plaintiff's Exhibit 15) and the orders of the Bankruptcy Court of the Eastern District of Pennsylvania, dated respectively September 10, 1984 and April 3, 1985 (Plaintiff's Exhibits 10 and 11), both of which find that a trust was created on behalf of the Sellers as to A & B's assets. Although these determinations do not have collateral estoppel effect on this Court, the Court accepts them as part of the record and finds that a statutory trust was established on behalf of the Sellers as to assets of A & B.[3]

---

**3.** Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes notice of the Bankruptcy Court's factual finding that the Sellers listed in Schedule A attached to its order provid-

ed the notices required to preserve their trust rights and were cash sellers. The bankruptcy proceedings are directly related to the instant matter, neither party has contested the authen-

Plaintiff's Exhibit 10 contains an exhibit which shows compliance with the statute's required notice to the Secretary of Agriculture by Sellers listed in that exhibit. The monetary value of the Sellers' claims under the statutory trust has not been determined, however, as discussed above. Accordingly, the monetary value of their claims under such trust is an issue of fact.

Defendant's second contention, that even if a Section 196(b) trust was created for the Sellers, the assets of Rotches, Inc., now held by Bankers Trust, do not constitute a part of its corpus, bears closer examination.

Under Section 196(b), the trust consists of "all livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, *shall be held by such packer in trust* for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid Sellers ..." 7 U.S.C. § 196(b) (emphasis added). Although, as beneficiaries of a statutory trust, the Sellers have rights to the assets of A & B as described above, Sellers only have a right to those assets "held by such packer in trust." Thus, with respect to Rotches, Inc., the statutory trust is applicable to receivables as to which A & B had a valid claim and any assets to which A & B had title.

Bankers Trust maintains that under the Inter–Creditor Agreement, A & B expressly subordinated its security interest in Rotches, Inc.'s assets and accounts receivable to Bankers Trust in 1983, a year before the events at issue here, and that as a

result Bankers Trust's right to those assets and accounts receivable is superior to A & B's. It argues that the statutory trust on behalf of the Sellers extended to assets and accounts receivable from Rotches, Inc. only if Bankers Trust's claims were first satisfied,[4] and that the funds representing the stopped payment checks constituted assets of Rotches, Inc. until such time as monies in payment therefor were transferred by Bankers Trust to A & B's bank, which did not occur.[5] If Bankers Trust's position is correct, Liberty Mutual's claim for assets and accounts receivable from Rotches, Inc. fails and its claim for the funds attributable to the stopped checks as proceeds of sales of livestock *held* by A & B as trustee for Sellers also fails.

On the record and authorities presented to the Court on this motion, the Court would have to grant defendants' cross motion and deny plaintiff's motion for summary judgment. However, the Court concludes that if the Inter–Creditor Agreement is interpreted as subordinating claims of A & B as a statutory trustee to the claims of Bankers Trust, the agreement would be illegal and that so to enforce its provisions would be against the declared public policy of Congress. That policy is to protect the claims of unpaid livestock producers from being subordinated to security interests or liens "by financing arrangements under which packers encumber ... inventories of or receivables or proceeds from meat, meat food products, or livestock products therefrom." 7 U.S.C. § 196(a). *See also, In re G & L Packing Co., Inc.,* 20 B.R. 789 (Bankr.N.D.N.Y.

---

ticity of the document and the order and its attachments are part of the public record of a court. *E.I. DuPont de Nemours & Co. v. Cullen,* 791 F.2d 5 (1st Cir.1986); *Ives Laboratories Inc. v. Darby Drug Co.,* 638 F.2d 538, 544 n. 8 (2nd Cir.1981), *rev'd on other grounds sub nom. Inwood Laboratories, Inc. v. Ives Laboratories Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). The Department of Agriculture decision is admissible pursuant to FRE 803(8)(C). *Revlon, Inc. v. Carson Products Co.,* 602 F.Supp. 1071, 1079 (S.D.N.Y.1985), *aff'd,* 803 F.2d 676 (2nd Cir.1986); *Japanese Electronic Products Litigation,* 723 F.2d 238, 268 (3rd Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986). *Lloyd v. American Export Lines, Inc.,* 580 F.2d 179 (3rd Cir.1978).

4. It is undisputed that Rotches Inc.'s assets and accounts receivable were insufficient to pay the line of secured credit extended by Bankers Trust.

5. Liberty Mutual argues that the checks upon which Rotches, Inc. stopped payment also constitute assets of the statutory trust, but plaintiff cites no authority that checks upon which payment is stopped entitle a subordinated creditor to any greater standing than the standing accorded to its underlying account receivable.

1982), *aff'd*, 41 B.R. 903 (N.D.N.Y.1984); 1976 U.S.Code Cong. & Admin.News 2267.

The statutory trust created by Section 196(b) is not a transitory trust as defendants' papers assume. Instead, A & B had been the trustee of such a trust for unpaid sellers of livestock ever since A & B became a packer or the date of enactment of 7 U.S.C. § 196, whichever event occurred later. When livestock was transferred to A & B by beneficiaries under the Act, that livestock became impressed with a statutory trust and any proceeds or accounts receivables created by sale of livestock similarly were impressed with a statutory trust for seller beneficiaries. *Filippo v. S. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1008, 1012 n. 2 (E.D.P.A.1978). For a trustee to subordinate those trust assets to the claims of a third party is not consonant with its role as a statutory trustee for the unpaid seller. A & B, as trustee, was required to preserve these assets since they were held by it in trust. Accordingly, A & B as trustee did not have power to enter into the Inter–Creditor Agreement which purported to subordinate trust assets,[6] i.e. A & B's prior security interest in the assets of Rotches Inc. Bankers Trust, by collecting the debt owed to it by Rotches Inc. from assets of Rotches Inc., to wit, collections of Rotches Inc.'s accounts receivable, did so without honoring the inalienable security interest of A & B as trustee in those assets of Rotches Inc.

■ Nor can it be claimed that, due to the date of the Inter–Creditor Agreement, Bankers Trust's rights antedated those of the Trust. The Trust here was in the nature of a revolving trust for the benefit of unpaid sellers of livestock. *In re Gotham Provision Co., Inc.*, 669 F.2d 1000 at 1010 (5th Cir.1982). Furthermore, Bankers Trust cannot claim it was unaware of the limitations placed on A & B due to the statutory trust. As a commercial bank, it is charged with constructive knowledge of legislation affecting extensions of credit in a specific industry to which a potential commercial borrower or co-creditor belongs. *See, e.g., Voest–Alpine International Corp. v. Chase Manhattan*, 707 F.2d 680, 685 (2nd Cir.1983).

■ Accordingly, the Court holds that A & B's accounts receivable from Rotches, Inc. can be recovered by Liberty Mutual in this action to the extent that Liberty Mutual can establish that they are valid claims of the statutory trust for funds required to make payments under the statutory trust to the Sellers and not claims asserted on behalf of A & B in a non-trustee capacity.

■ Lastly, plaintiff seeks to amend its complaint to assert a claim that A & B was a beneficiary of a Section 196(b) trust over Rotches, Inc.'s assets. Rotches, Inc. does meet the statutory definition of a packer under 7 U.S.C. § 191, but, according to the unrebutted affidavit of David A. Rotches dated May 22, 1984 (Defendant's Exhibit C), Rotches, Inc. did not purchase livestock from A & B, a requirement for a Section 196(b) trust. Liberty Mutual argues that the statutory definition of livestock means "cattle, sheep, swine, horses, mules or goats—whether live or dead," 7 U.S.C. § 182, and that the fact Rotches, Inc. purchased dressed hogs from A & B as found by the Judicial Officer of the Agriculture Department means that Rotches, Inc. purchased livestock and is a statutory trustee under Section 196(b). Liberty Mutual argues that a dressed hog is the equivalent of a dead hog. However, it ignores the statutory definition of meat food products as "all products and by-products of the slaughtering and meat packing industry— if edible." 7 U.S.C. § 182. The term "dressed," means "killed, bled and more or less completely prepared for cooking." *Websters 3rd Int'l Dictionary* (unabridged) at 689, 3rd Ed.1966, G.C. Merriam. Indeed, any farm boy knows a dead hog must be bled, disemboweled and have its bristles removed before it is dressed. A

---

**6.** The Inter Creditor Agreement is signed by A & B without any indication it was acting as trustee for Sellers. Accordingly, the Court interprets the Inter–Creditor Agreement as not subordinating to Bankers Trust A & B's security interest in Rotches Inc.'s assets sufficient to pay accounts receivable which A & B held or would hold in trust for sellers of livestock under 7 U.S.C. § 196(b).

dressed hog need only be cut into parts for cooking purposes. Thus, under the statutory definition, dressed hogs would be meat food products and not livestock. Indeed, the Department of Agriculture Judicial Officer's detailed findings of fact as to the nature of the transactions between A & B and Rotches, Inc., on which plaintiff relies for evidentiary findings, held that the relationship between A & B and Rotches, Inc. was not such as to invoke the statutory trust permitted by § 196(b) because Rotches, Inc. purchased only meats and meat food products from A & B. Plaintiff's Exhibit 15, at 11.[7] Since there is no counter evidence cited by plaintiff on this motion, the Court finds that the sales by A & B to Rotches, Inc. did not consist of livestock and as a result, there was no statutory trust on behalf of A & B as to Rotches, Inc.'s funds. Plaintiff's Exhibit 15, 4, 11.

## CONCLUSION

Since the issue upon which these motions were decided by the court was not briefed by counsel, partial summary judgment for plaintiff will be entered thirty days from the date of entry of this order unless defendants file papers with the Court by February 18, 1991, demonstrating error in the holding.

A conference to arrange for a hearing on damages will be held on February 14, 1991 at 9:00 a.m. at the United States Courthouse, Courtroom 302.

IT IS SO ORDERED.

---

7. The Judicial Officer found that Rotches, Inc. had violated a different provision of the Packers and Stockyards Act, Section 202(a), by failing to pay for meat and meat products, not livestock. 7 U.S.C. § 192(a).