LIBERTY MUTUAL INSURANCE COMPANY, as subrogee of Arbogast & Bastian, Inc., and Liberty Mutual Insurance Company, Plaintiffs,

v.

BANKERS TRUST COMPANY and Rotches Pork Packers, Inc., Defendants.

No. 88 Civ. 3421 (RPP).

United States District Court, S.D. New York.

March 28, 1991.

---

Ballon, Stoll & Itzler, New York City by Richard Weinberger, for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler, New York City by Robert Fracasso, for defendant Bankers Trust.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

The Court has reviewed defendant Bankers Trust's memorandum of law dated February 26, 1991 and the letter from defendant's counsel dated March 7, 1991 enclosing a "bench memorandum," as well as the letters from plaintiff Liberty Mutual's counsel dated March 4 and March 18, 1991, respectively, and its "bench memorandum," relating to the Court's invitation for comments contained in its Opinion and Order of February 12, 1991, 758 F.Supp. 890 (S.D.N. Y.). After due consideration, the Court adheres to that Opinion and Order, in which the facts of this case are fully set forth.

### I. Review of Parties' Submissions

■■■■ Arbogast & Bastian ("A & B"), as statutory trustee for the benefit of cash sellers, did not have the power to enter into the Inter–Creditor Agreement which purported to subordinate trust assets.[1] As

---

1. A & B could have had the power as purchaser of livestock on credit to subordinate accounts receivable solely relating to those purchases.

The record does not indicate that any sellers of livestock extended credit to A & B so as to waive their rights under the statute.

purchases of livestock were made by A & B from cash sellers, that livestock and the meat products which were created as a result of their purchases became a part of the corpus of the statutory trust, as did the proceeds and accounts receivable attributable to A & B's sale of such products to distributors such as defendant Rotches, Inc. Since at the time of the Inter–Creditor Agreement A & B had a prior security interest in any and all of Rotches, Inc.'s accounts receivable and assets, it could not, as trustee, release the lien on Rotches, Inc.'s assets which lien protected its ability to collect on behalf of the trust beneficiaries on sales to Rotches, Inc..

To hold that A & B as trustee could subordinate the trust's lien on the receivables of a creditor would frustrate the purposes of the Packers and Stockyards Act, 7 U.S.C. § 196 *et seq.*, as set forth in the legislative history of the 1976 amendments which created, *inter alia,* the provisions for the statutory trust. *See, In re Gotham Provision Co., Inc.,* 669 F.2d 1000, 1009–1010, 1011, 1011 n. 14 (5th Cir.1982). The trust provisions of the Packers and Stockyards Act, added in 1976,

> were devised to protect livestock sellers from potentially devastating financial losses of the type many such sellers experienced in the 1970's when a number of major meat packing concerns failed, leaving sellers unpaid. Under the law as it then existed, banks and other lending institutions were able to enforce their priority claims to the inventories and accounts receivables [sic] of the bankrupt packers, leaving the livestock sellers uncompensated for the products they had sold to the packers but for which they had not yet been paid.

> \*      \*      \*      \*      \*      \*

> The statutory trust created by § 206(b) remedies this injustice by unequivocally giving priority to the interests of cash sellers of livestock in packer inventories, accounts receivable, and proceeds derived from the cash seller's livestock over lenders who take security interests in those assets ...

*In re G & L Packing Co.,* 41 B.R. 903, 908–10 (N.D.N.Y.1984). *See also, In re Gotham, supra,* 669 F.2d at 1009.

Inter-creditor agreements subordinating a packer's rights to collect receivables are little different in effect, as regards cash sellers, from secured loans to packers which give a lending institution priority claims over receivables of the packer. Accordingly, A & B violated its fiduciary duty to the unpaid cash sellers in entering into the Inter–Creditor Agreement and subordinating its security interest in Rotches, Inc.'s accounts receivable and other assets, thus reducing the value of the trust's interest in Rotches, Inc.'s accounts receivable and furthering A & B's individual interests to the detriment of the trust's interests and those of the trust beneficiaries. Bankers Trust as a commercial lender is deemed to be aware of the trustee status of A & B and the violation of fiduciary duty which was occurring.

Bankers Trust argues that the actions of A & B as trustee in subordinating its security interest are valid, as long as they are consistent with the duty to exercise reasonable care, and that A & B exercised reasonable care in administering the statutory trust property because the Inter–Creditor Agreement was beneficial to the cash sellers. It argues that the benefit consisted of allowing for prompt payment and financing of increased purchases from A & B by Rotches, Inc., which in turn would mean more purchases of livestock from the cash sellers. This argument would be equally applicable to secured loans by banking institutions to A & B, the very practice at which the Packers and Stockyards Act was aimed. Bankers Trust's argument only highlights the similarity of the two transactions in terms of effect on the cash sellers.

Bankers Trust has also argued that the Court's prior ruling will impose a severe burden on financing in the packing industry. Such an argument is better addressed to Congress, if indeed it was not already raised in the debates surrounding the 1976 amendments. The Court's Opinion and Order of February 12, 1991 as supplemented by this Opinion stands.

## II. Prejudgment Interest and Attorneys' Fees

■ At the March 14, 1991 court conference, the parties indicated that they could agree on the amount of damages exclusive of interest and attorneys' fees but were uncertain as to defendants' liability as to interest and attorneys' fees. The Releases and Assignments provided by the cash sellers to Liberty Mutual assign all of the assignors' rights or causes of action, without limitation, under the Packers and Stockyards Act. Plaintiff's Notice of Motion for Summary Judgment, Exhibits 13, 18. With respect to prejudgment interest, the cash sellers are entitled to prejudgment interest on the amount due so that they receive "full payment." *Pennsylvania Agricultural Cooperative Marketing Assn. v. Ezra Martin Co.*, 495 F.Supp. 565, 570–71 (M.D.Pa.1980). Prejudgment interest is requested at the rate of 9% per annum from May 18, 1984, the date on which the Bankruptcy Court for the Eastern District of Pennsylvania temporarily enjoined Rotches, Inc. and Bankers Trust from diverting the proceeds of sales of livestock and Rotches, Inc.'s accounts receivable. Bankers Trust has not objected to the rate of interest or the date requested. Accordingly, plaintiff's motion for prejudgment interest is granted.

With respect to the propriety of an award of attorneys' fees, the Court's review of the briefs indicates the parties have not briefed the issue with sufficient detail for a court determination of this issue. Briefs on the issue of attorneys' fees, with reference to the legislative history and applicable law should be filed no later than April 12, 1991.

IT IS SO ORDERED.