**LIBERTY MUTUAL INSURANCE COMPANY, as Subrogee of Arbogast & Bastian, Inc., and Liberty Mutual Insurance Company, Plaintiffs,**

v.

**BANKERS TRUST COMPANY and Rotches Pork Packers, Inc., Defendants.**

No. 88 Civ. 3421 (RPP).

United States District Court, S.D. New York.

June 24, 1991.

---

Ballon, Stoll & Itzler, by Richard Weinberger, New York City, for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler, by Robert Fracasso, New York City, for defendant Bankers Trust Co.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") seeks attorneys' fees in this case, which arises under the Packers and Stockyards Act, as amended and supplemented, 7 U.S.C. § 181 *et seq.* The facts of the case are set forth in this Court's Opinion and Order of February 12, 1991. *Liberty Mutual Ins. Co. v. Bankers Trust Co. et al.,* 758 F.Supp. 890 (S.D.N.Y.1991). The Court granted Liberty Mutual's motion for prejudgment interest in an opinion and Order of March 28, 1991. *Liberty Mutual Ins. Co. v. Bankers Trust Co. et al.,* 761 F.Supp. 9 (S.D.N.Y.1991).

Liberty Mutual also moved for an award of attorneys' fees and the Court reserved decision on the motion pending additional submissions by the parties.

For the reasons stated below, the motion for attorneys' fees is denied.

## DISCUSSION

Liberty Mutual argues that *Pennsylvania Agricultural Cooperative Marketing Assn. v. Ezra Martin Co.,* 495 F.Supp. 565, 570–71 (M.D.Pa.1980), which was cited in this Court's opinion of March 28, 1991 as precedent for awarding prejudgment interest, should also be read as allowing an award of attorneys' fees. In *Ezra Martin, supra,* the court held that the Packers and Stockyards Act requirement that unpaid cash sellers receive "full payment" allowed an award which included the "principal amount (purchase price), prejudgment interest on that amount from the date following the delivery and acceptance of the livestock, and costs incurred by the suppliers in seeking to enforce their rights." 495 F.Supp. at 570. The court relied on the following language from Section 206 of the Packers and Stockyards Act, at 7 U.S.C. § 196(b): " 'All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock *until full payment has been received* by such unpaid sellers ...' 7 U.S.C. § 196(b) (emphasis added)." 495 F.Supp. at 570. No language can be found in *Ezra Martin,* however, supporting an award of attorneys' fees in this case. Indeed, counsel for the prevailing party in *Ezra Martin* did not even include the "costs of litigation" in its proposed stipulation, nor did it object to the court's omission thereof, so the court deemed any such claims waived. 495 F.Supp. at 571. *See also,* 28 U.S.C. § 1920 (West 1991).

Liberty Mutual also seeks to apply the language in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), to its

motion. In *Alyeska,* the Supreme Court listed the Packers and Stockyards Act in a footnote as one of the federal statutes which allows for a recovery of attorneys' fees. 421 U.S. at 260, n. 33, 95 S.Ct. at 1623, n. 33. However, the note referred to 7 U.S.C. § 210(f) as the provision under which attorneys' fees were allowed. *Id.* By its terms, 7 U.S.C. § 210(f) applies to those actions brought under the Packers and Stockyards Act to enforce an award of damages by the Secretary of Agriculture.[1] The present action is not a suit to enforce an award of damages by the Secretary of Agriculture and the Secretary of Agriculture did not issue such an award of damages to plaintiff or its assignors against Bankers Trust or Rotches, Inc.[2] Accordingly, 7 U.S.C. § 210(f) is not authority for any award of attorneys' fees in this action.

7 U.S.C. § 196, the section providing for the statutory trust for unpaid cash sellers, contains no express authorization for an award of attorneys' fees to a successful litigant in Liberty Mutual's position, nor has any court so interpreted that provision of the Packers and Stockyards Act.[3] The legislative history of 7 U.S.C. § 196 is silent as to any Congressional intent to award attorneys' fees in an action to determine creditors' respective rights under the statutory trust provision. In view of Congress' earlier express inclusion of attorneys' fees in 7 U.S.C. § 210(f), the right to such fees should not be implied under 7 U.S.C. § 196. *Cf., e.g., Federal Trade Commission v. Simplicity Pattern Co.,* 360 U.S. 55, 67, 79 S.Ct. 1005, 1012–13, 3 L.Ed.2d 1079 (1959), *reh'g denied,* 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93 (1959).

1. 7 U.S.C. § 210(e)–(f) provides:

    (e) If after hearing on a complaint the Secretary determines that the complainant is entitled to an award of damages, the Secretary shall make an order directing the defendant to pay to the complainant the sum to which he is entitled on or before a day named. (f) If the defendant does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may within one year of the date of the order file in the district court of the United States for the district in which he resides or in which is located the principal place of business of the defendant or in any State court having general jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the Secretary in the premises. Such suit in the district court shall proceed in all respects like other civil suits for damages except that the findings and orders of the Secretary shall be prima facie evidence of the facts therein stated, and the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the petitioner finally prevails, he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of the costs of the suit.
    7 U.S.C.A. 210(e)–(f) (1980 & Supp.1991).

2. Rotches Pork Packers, Inc. ("Rotches, Inc.") is defunct and never appeared in this action. The receivables of Rotches, Inc. were collected by Bankers Trust, as set forth in this Court's prior opinions. In a prior adversarial proceeding before the United States Bankruptcy Court for the Eastern District of Pennsylvania, filed on behalf of Arbogast & Bastian ("A & B") to recover

funds from Rotches, Inc., and Bankers Trust, those three parties entered into a stipulation wherein they agreed that Bankers Trust should collect all accounts receivable of Rotches, Inc. and maintain records of all such collections and deposits, without prejudice to any claim of A & B or other parties to those funds. Exhibit B to *the Complaint.* Liberty Mutual is the subrogee of A & B and the assignee of certain livestock producers who sold to A & B and were not paid after Rotches, Inc. stopped payment on several hundred thousand dollars' worth of checks to A & B. The proceeding before the bankruptcy court was later dismissed without prejudice by stipulation in March, 1985. The only order of the Secretary of Agriculture submitted to the Court is the Judicial Officer's decision dated April 13, 1987, on the appeal of David Rotches and Rotches, Inc. as to the $50,000 civil penalty assessed against David Rotches in an order by an Administrative Law Judge for failing to pay for meat and meat products, which also ordered him and Rotches, Inc. to cease and desist from failing to pay. *See* Exhibit 15 to the Notice of Motion for Summary Judgment.

3. In *Cook v. Hartford Accident & Indemnity Co.,* 657 F.Supp. 762 (D.Neb.1987), a suit on a bond which is required of packers, market agencies and dealers subject to the Packers and Stockyards Act, under 7 U.S.C. § 204, the court awarded livestock sellers attorneys' fees in collecting against a market agency's surety, by applying Nebraska law. 657 F.Supp. at 771–72. In *Arnold Livestock Sales Co. v. Pearson,* 383 F.Supp. 1319 (D.Neb.1974), the court held that attorneys' fees were not recoverable in an action on the bond required under 7 U.S.C. § 204, because the provision was silent as to attorneys' fees. 383 F.Supp. at 1323.

Since the general rule is that, with few exceptions, each litigant in federal court should pay its own attorneys' fees and that any statutory authorization for awarding a party attorneys' fees must be express, *see Alyeska, supra,* 421 U.S. at 245, 247, 257 *et seq.,* 95 S.Ct. at 1615, 1616, 1621 *et seq.,* the Court finds no justification for an award of attorneys' fees in the present case in the Packers and Stockyards Act itself.

Liberty Mutual also argues that, consistent with the provisions of 7 U.S.C. § 209, it is entitled to pursue its common law rights to collect attorneys' fees because it was successful in an action "preserving or recovering a fund for the benefit of others in addition to [it]self." *Alyeska, supra,* 421 U.S. at 257, 95 S.Ct. at 1621,[4] and particularly under the "common fund doctrine," *Boeing v. Van Gemert,* 444 U.S. 472, 481, 100 S.Ct. 745, 750–51, 62 L.Ed.2d 676 (1980).

■ The common fund doctrine does not apply to the present case. The common fund doctrine is based on the notion that those who benefit from a lawsuit without contributing to its costs may be taxed with a share of the expense of a successful lawsuit by allowing the actual litigant to recover costs and attorneys' fees from the common fund. *Boeing, supra,* 444 U.S. at 478, 100 S.Ct. at 749.[5] It is a means of dividing the costs of suit among successful litigants. Recovery of attorneys' fees under such a theory would be based on the cash sellers' assignments to Liberty Mutual. The cash sellers' claims lay against A & B as trustee and not against Bankers

Trust. The failure to pay cash sellers to date was due to the action of A & B as trustee in subordinating trust assets to Bankers Trust's security interest through the Inter–Creditor Agreement. A & B itself has no assets due to its bankruptcy. Accordingly, the cash sellers' claims under common law could not be collected against A & B. No proceedings were completed against Rotches, Inc. and Bankers Trust by the bankrupt's estate, so that no determination has been made of what accounts receivable were valid and outstanding and were assets of the trust. There is no showing that A & B would have had any funds available to pay attorneys' fees.

■ With respect to the historic equity power to allow a trustee of a fund to recover its costs, including attorneys' fees, as stated in *Alyeska,* that also raises a difficult issue. Without citing any other authority for its position, Liberty Mutual states it has previously demonstrated that Rotches, Inc. owed A & B the principal sum of $1,728,135.22. However, the Court's prior opinion only held that "A & B's accounts receivable from Rotches, Inc. can be recovered by Liberty Mutual in this action to the extent that Liberty Mutual can establish that they are valid claims of the statutory trust for funds required to make payments under the statutory trust to the Sellers and not claims asserted on behalf of A & B in a non-trustee capacity." 758 Supp. at 895. *See also id.,* n. 6 ("the Court interprets the Inter–Creditor Agreement as not subordinating to Bankers Trust A & B's security interest in Rotches Inc.'s assets sufficient to pay accounts receivable which A & B

---

**4.** Section 308 of the Packers and Stockyards Act, 7 U.S.C. § 209, reads as follows:

(a) If any person subject to this chapter violates any of the provisions of this chapter or of any order of the Secretary under this chapter, relating to the purchase, sale, or handling of livestock, he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.

(b) Such liability may be enforced either (1) by complaint to the Secretary as provided in section 210 of this title, or (2) by suit in any district court of the United States of competent jurisdiction; but this section shall not in

any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

7 U.S.C.A. § 209 (as amended) (1980 & Supp. 1991).

**5.** *Boeing* was also a class action lawsuit, unlike the present action brought by a subrogee/assignee, and the question presented was "whether a proportionate share of the fees awarded lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment." 444 U.S. at 473, 100 S.Ct. at 747.

74

held or would hold in trust for sellers of livestock under 7 U.S.C. § 196(b)").

Liberty Mutual suggests it has reached agreement with Bankers Trust as to the amount Liberty Mutual may recover as statutory trust assets, exclusive of interest and costs, as $827,067.73 and states "If counsel fees are not added to the principal and interest, the livestock suppliers will not receive the 'full payment' to which they are entitled as beneficiaries of the statutory trust." Plaintiff's Memorandum of Law in Support of Application for Attorneys' Fees, at 11 n. 4. The Court finds that Liberty Mutual has not made an adequate record to establish that those due and payable accounts receivable from Rotches, Inc. which were trust assets exceed the principal and interest due the cash sellers or that it has established that it has a right to deduct attorneys' fees from trust funds due the beneficiaries. Furthermore, since under this common law theory upon which Liberty Mutual would recover, it is suing on behalf of A & B, as trustee, the Court's finding that A & B violated its obligations as trustee under the Packers and Stockyards Act must be considered. *Liberty Mutual, supra,* 758 F.Supp. at 895. Under these circumstances, there is an inadequate basis on which to determine that any award of attorneys' fees can be paid.

## CONCLUSION

Accordingly, Liberty Mutual's motion for attorneys' fees is denied. The parties are ordered to appear for a conference at 9 a.m. on July 9, 1991, in Courtroom 302, United States Courthouse, Foley Square, New York, New York.

IT IS SO ORDERED.